UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

CIVIL ACTION No. 2011-00007-JAW
CRIMINAL ACTION No. 2008-00006-JAW

ADAM STONE
Petitioner

v.

UNITED STATES
Respondent

**PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION FOR
COURT ORDER DIRECTING ATTORNEY VIRGINIA VILLA TO RELEASE
CLIENT FILES AND SUBMIT TO AN INTERVIEW**

**PETITIONER'S MOTION FOR A PROTECTIVE ORDER**

## INTRODUCTION

Adam Stone ["Stone"], who is currently serving a seventeen and one-half year prison term, has filed a petition for relief pursuant to 28 U.S.C. § 2255. Therein, Stone argues that his attorney, Virginia Villa, provided constitutionally ineffective assistance of counsel at sentencing because she failed to adequately investigate and present important mitigating evidence, specifically an evaluation of a mental health professional establishing that he presents a minimal risk of re-offending.

Invoking Rule 6 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the government has moved the Court for an order directing Attorney Villa (1) to produce "all records in her possession, or available to her, that are relevant to the issue raised in the Section 2255 petition;" and, (2) to "submit to an interview by Government counsel with respect to Stone's section 2255 petition claim." (Document 38, 1, 3). The government claims that unidentified

"[r]ecords and information in Attorney Villa's possession concerning the personal, family, or mental health background of Stone that are relevant to the claim that Attorney Villa violated Stone's rights... will assist [it] in responding to Stone's Section 2255 petition." (Document 38, 2). An interview conducted by the prosecutor "concerning Attorney Villa's communications with Stone about his personal, family, or mental health background" will likewise "enable" it to respond. (Document 38, 2). According to the government, Stone has "waive[d] any right to invoke the attorney-client privilege against communications with" Attorney Villa. (Document 38, 2).

Stone hereby opposes the government's motion. First, the motion does not satisfy Rule 6(a) and (b), neither setting forth "good cause" for discovery nor listing with any modicum of particularity the documents the government seeks or the questions it wishes to pose. Rule 6 does not even authorize the order the government requests. Discovery, if it is permitted by the Court, must be conducted in accordance with the Federal Rules of Criminal or Civil Procedure. No discovery rule permits an informal, one-on-one interview with government counsel. Second, the motion is fatally over-broad. Stone has not waived wholesale his attorney-client privilege; any waiver certainly does not encompass "all records in [Attorney Villa's] possession, or available to her" or confidential communications "concerning the personal, family, or mental health background of" Stone. The government's motion should be denied as written.

In the event that the Court determines that the government is entitled to discovery under Rule 6 and that Stone has waived the attorney-client privilege as to particular records and communications, Stone further moves for a protective order. The government should be prohibited from using or disseminating the information disclosed by Attorney Villa for any purpose other than to litigate the instant § 2255 petition, and especially during any re-sentencing proceeding.

# I.   AN OVERVIEW OF APPLICABLE LAW.

Rule 6 of the Rules Governing Section 2255 Proceedings provides, in relevant part:

(a)   **Leave of Court Required**. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law....

(b)   **Requesting Discovery**. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Under subsection (a), the parties to a *habeas* proceeding are not automatically entitled to discovery. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997)("[a] *habeas* petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course"). Rather, the party seeking discovery must make a showing of "good cause." *Id.* ("[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is...entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry"), quoting *Harris v. Nelson*, 392 U.S. 286, 300 (1969). Furthermore, subsection (b), which "provides for judicial consideration of all matters subject to discovery," *see* Advisory Committee Notes to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts,[1] directs the discovery-proponent to include proposed interrogatories, proposed requests for admissions and also to specify documents sought. "This is to advise the judge of the necessity for discovery and enable him to make certain that the inquiry is relevant and appropriately narrowed." *Id.* Only upon compliance with Rule 6, and with prior leave of the district court, may a party then avail itself of the discovery procedures permitted by the Federal

---

[1]   *See* Advisory Committee Notes to Rule 6 of the Rules Governing Section 2255 Proceedings in the United States District Courts (notes to § 2254 rules "fully applicable to discovery under these rules for § 2255 motions").

Rules of Criminal or Civil Procedure. *See Payne v. Bell*, 89 F.Supp.2d 967, 970 (W.D.Tenn. 2000)(under § 2254's Rule 6, "[o]nce good cause is shown, a *habeas* petitioner may avail himself of the discovery procedures permitted by the Federal Rules of Civil Procedure, including the use of interrogatories, depositions, document requests, and requests for tangible evidence").

The attorney-client privilege continues after termination of the attorney-client relationship, *see Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984), and remains in effect post-conviction. F.R.E. 1101(c)("The rule with respect to privileges applies at all stages of all actions, cases, and proceedings"). Under the Federal Rules of Criminal and Civil Procedure privileged material is not discoverable. F. R. Crim. P. 16(b)(2) lists the following as "information not subject to disclosure:"

(A)     reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or

(B)     a statement made to the defendant, or the defendant's attorney or agent, by:

    (i)     the defendant;

    (ii)    a government or defense witness; or

    (iii)   a prospective government or defense witness.

*See* F. R. Civ. P. 26(b)(1)("Parties may obtain discovery regarding any **nonprivileged** matter that is relevant to any party's claim or defense...")(emphasis supplied). An attorney has an obligation to assert the privilege on behalf of the client and not to disclose confidential information until there is a judicial determination that there is no privilege. *See United States v. Edgar*, 82 F.3d 499, 508 (1st Cir. 1996) and authorities cited.

It is well-settled that, where a *habeas* petitioner raises a claim of ineffective assistance, he implicitly waives the attorney-client privilege. *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir.

2003)(en banc). The theoretical basis for this implied waiver rule has been termed "the fairness principle," and dates back to at least *Hunt v. Blackburn*, 128 U.S. 464 (1888), where the Court stated: "When Ms. Blackburn entered upon a line of defence which involved what transpired between herself and Mr. Weatherford [her lawyer], and respecting which she testified, she waived her right to object to his giving his own account of the matter." *Bittaker*, 331 F.3d at 718-719, quoting *Hunt*, 128 U.S. at 470-471. The Eighth Circuit has described the rationale as follows:

> A client has a privilege to keep his conversations with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence....Surely, a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege.

*Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974). *See also* Kenneth S. Broun, 1 *McCormick on Evidence* § 91.1 (6th ed. 2006)("when a client and attorney become embroiled in a controversy between themselves, as in an action by the attorney for compensation or by the client for damages for the attorney's negligence, the seal is removed from the attorney's lips"); ABA Model Rules of Professional Conduct Rule 1.6(b)(5)("A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes is necessary...to respond to allegations in any proceeding concerning the lawyer's representation of the client").

It is equally well-settled that this rationale only supports a waiver broad enough to give the opponent of the *habeas* claim a fair opportunity to defend against it. *Bittaker*, 331 F.3d at 720. The attorney-client privilege is not waived for all time and all purposes. *Id.* at 717. Instead, the scope of a waiver is "consistently construed narrowly" to be "no broader than needed to ensure the fairness of the proceedings." *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005), quoting *Bittaker*, 331 F.3d at 720.

The implied waiver must first be tailored to the precise records and communications that are put in issue by the § 2255 petition; an ineffectiveness claim is not an open invitation for the government to delve into other, unrelated privileged documents and areas.[2] *See Mason v. Mitchell*, 293 F.Supp.2d 819, 823-824 (N.D. Ohio 2003)(rejecting respondent's request "to question the Petitioner about what he told his trial counsel regarding his involvement in the crime" where the *habeas* claim was that counsel performed deficiently in eschewing a mitigation defense in favor of a residual doubt defense; "[residual doubt's] connection between the Petitioner's ineffective assistance claims and the need to disclose possible inculpatory privileged information is tenuous at best"). *See also United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009)(petitioner implicitly waived his attorney-client privilege by challenging counsel's advice "with respect to communications with his attorney necessary to prove or disprove" that specific claim); *Oliver v. United States*, 2010 WL 2612738, *1 (D. Mass. June 25, 2010)(unpublished)(waiver attending a *habeas* claim of ineffectiveness "extends to communications with trial counsel that are relevant to the alleged ineffectiveness"). Thus, in *Pinson*, 584 F.3d 972, the government argued that, because the petitioner "raised questions as to the effectiveness of his defense counsel by virtue of certain specific acts or omissions," he waived attorney-client privilege and the court should order the attorney to produce "a detailed affidavit outlining information in response to the allegations of ineffective assistance of counsel cited in defendant's [§] 2255 motion." The Tenth Circuit declared "troubling" the resultant court order broadly directing the petitioner's attorney to "provide an affidavit addressing the issues raised in the

---

[2]    Decisions construing the implied waiver of the attorney-client privilege are applied with the same force to the work-product privilege, "a complementary rule that protects many of the same interests." *Bittaker*, 331 F.3d at 722 n. 6. *See Lott*, 424 F.3d at 448 n. 1, citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *Mitchell*, 293 F.Supp.2d at 823-824.

defendants [sic] § 2255 Motion." *Id.* at 978-979. The Court observed that the order could have been "more narrowly tailored," and that any discovery order "should ideally be carefully tailored to protect prisoners' Sixth Amendment rights." *Id.* at 979. *Cf. Johnson v. Alabama*, 256 F.3d 1156, 1168 n. 4, 1178-1180 (11th Cir. 2001)(wherein the district court ordered production, under seal, of counsel's notes and then conducted *in camera* review to determine "whether and to what extent [the petitioner's] communication presumptively protected by attorney-client privilege is relevant to the specific ineffective assistance of counsel claims raised by [the petitioner]," that is whether counsel were deficient in not pursuing a "third party culprit" defense; petitioner admitted to counsel, as reflected in the notes, that he was involved in robbery and shot the victim).[3]

The implied waiver must also be confined to the *habeas* proceedings. Judge Kozinski, writing for the en banc *Bittaker* court, cogently explained:

> A narrow waiver rule is...consistent with the interests of a *habeas* petitioner in obtaining a fair adjudication of his petition and securing a retrial untainted by constitutional errors. Here, Bittaker is claiming that he was denied a constitutionally adequate criminal trial because he had ineffective counsel and for many other reasons as well. If he succeeds on any of these claims, it will mean that his trial was constitutionally defective. Extending the waiver to cover Bittaker's retrial would

---

[3]      Citing *United States v. Desir*, 273 F.3d 39 (1st Cir. 2001), the government suggests: "The First Circuit has explained that the attorney-client privilege cannot be used as both a sword and a shield to avoid the disclosure of information that may be harmful to a criminal defendant." (Document 38, 2). In reality, the First Circuit stated in *Desir* that the concept of implied waiver of the attorney-client privilege "is not well-developed in this circuit," and thereafter expressly declined to define the concept's contours. *Id.* at 45-46. The "sword and shield" language comes from the Court's parenthetical to *United States v. Workman*, 138 F.3d 1261 (8th Cir. 1996). *Id.* at 45. Rather, in this Circuit, the boundaries of an implied waiver may be limned by the balancing test enunciated in *Greater Newburyport Clamshell Alliance v. Public Serv. Co. of N.H.*, 838 F.3d 13 (1st Cir. 1988) The test requires the district court to consider whether: (1) the moving party has demonstrated the relevancy of the materials sought; (2) there is any reasonable alternative source for the information the materials contain; and (3) the presumptively valid interest in preserving confidentiality of privilege materials outweighs any need for disclosure. *F.D.I.C. v. R.W. Beck, Inc.*, 2004 WL 1474579, *1 (D. Mass. July 1, 2004)(unpublished), citing *Clamshell Alliance*.

immediately and perversely skew the second trial in the prosecution's favor by handing to the state all the information in petitioner's first counsel's casefile. If a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free. Giving the prosecution the advantage of obtaining the defense case file - and possibly even forcing the first lawyer to testify against the client during the second trial - would assuredly not put the parties back at the same starting gate.

What's more, requiring the petitioner to enter such a broad waiver would force him to the painful choice of, on the one hand, asserting his ineffective assistance claim and risking a trial where the prosecution can use against him every statement he made to his first lawyer and, on the other hand, retaining the privilege but giving up his ineffective assistance claim.

331 F.3d at 722-723. The *Bittaker* court characterized the district court's entry of a protective order against the state authorities as being "entirely justified," and also observed that the court "would have abused its discretion" had it not entered such an order. *Id*. at 728. Relying upon the Ninth Circuit's decision, other federal courts have directed the entry of orders foreclosing the government from using the privileged attorney-client materials and communications divulged during *habeas* proceedings upon a finding of implied waiver against the petitioner in subsequent proceedings, including re-sentencing. *See*, *e.g.*, *United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010)(holding that petitioner whose sentencing counsel had an actual conflict of interest was entitled to a protective order on remand for re-sentencing prohibiting the government from using privileged information revealed by counsel in litigating the conflict claim). *See also Drake v. United States*, 2010 WL 3059197, *1 (M.D. Tenn. July 30, 2010(unpublished)(holding that, while petitioner had waived attorney-client privilege "on the ineffective assistance of counsel issues he raises," "[a]ny information obtained from counsel shall be used only with regard to the litigation of Movant's § 2255 Motion **and for no other purpose**")(emphasis supplied).

8

## II.    STONE'S OPPOSITION TO THE GOVERNMENT'S MOTION.

### A.    The Government's Motion Does Not Satisfy Rule 6.

As an initial matter, the government's motion does not satisfy Rule 6's express requirements. Therein, the government merely asserts that records in Attorney Villa's client file or available to her and an interview by the prosecutor may "assist" or "enable" a response to Stone's ineffectiveness claim. That the breach of Stone's attorney-client privilege could possibly make the government's job easier isn't sufficient "good cause" for discovery under Rule 6(a). *See Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)("Rule 6...does not authorize fishing expeditions"); *Lott v. Bradshaw*, 2005 WL 3741492, *10-11 (N.D.Ohio Mar. 29, 2005)(unpublished)(holding that warden-respondent failed to show "good cause" for request to depose post-conviction counsel, a retired police detective, hospital personnel who treated the victim, and members of the petitioner's trial team), abrogated on other grounds by *Lott*, 424 F.3d 446. Moreover, despite Rule 6(b)'s mandate, the government does not identify the kinds of documents it seeks (e.g., notes or invoices evincing consultation with a mental health professional), or specify the questions it proposes to ask Attorney Villa during an interview by government counsel (e.g., whether or not counsel did in fact consult with a mental health professional). It only requests an order directing disclosure of "relevant" records and privileged attorney-client communications. This is plainly not enough.  *See Teti v. Dennehy*, 2006 WL 2161882, *4 (D.Mass. Aug. 1, 2006)(unpublished)(denying the petitioner's Rule 6 discovery request in part because the petitioner did "not set forth 'any proposed interrogatories and requests for admissions,' nor [did] he specif[y] 'any requested documents'"). *See also R.W. Beck*, 2004 WL 1474579 at *1 (under *Clamshell Alliance*, court must consider whether moving party has demonstrated relevancy of privileged materials sought).

More to the point, the government's motion evinces a seeming misunderstanding of Rule 6. While that rule gives the Court discretion to permit a party to conduct discovery, that discovery must be conducted **pursuant to the Federal Rules of Criminal or Civil Procedure**. *See Lott*, 424 F.3d at 452 (Rule 6(a) of the Rules Governing 2254 Cases "directs that discovery is to be conducted in accordance with the Federal Rules of Civil Procedure"). Rule 6 is not itself authority for the district court to direct a non-party to disclose privileged records and to submit to an indiscriminate, unchecked interview by the prosecutor. Rather, upon a showing of "good cause," the Court may authorize discovery; thereafter, it is presumably up to the government to **subpoena** Attorney Villa's client file, in accordance with F. R. Crim. P. 17 or F. R. Civ. P. 34(c) and 45. *See Gary v. Terry*, 2005 WL 3534761, *3 (M.D.Ga. Dec. 23, 2005)(unpublished)(finding authority to allow § 2254 petitioner's Rule 6 motion for discovery from state coroner under F. R. Civ. P. 30, 34(c), and 45). Both the Federal Rules of Criminal and Civil Procedure contemplate production of documents to the district court, as opposed to the government, and permit the recipient of the subpoena to object to or move to quash or modify it. F. R. Crim. P. 17(c)(1)("The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence"); 17(c)(2)("On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive"); F. R. Civ. P. 45(c)(2)(A)("A person commanded to produce documents..., or tangible things...need not appear at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial"); 45(c)(2)(B)("A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection..."); 45(c)(3)(quashing or modifying a subpoena); 45(d)(2)(A)("A person withholding subpoenaed information under a claim that it is privileged or

subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a matter that, without revealing information itself privileged or protected, will enable the parties to assess the claim"). These protections, which the government would have the Court bypass, are crucial in this case, where the government requests records from Attorney Villa which may still be privileged (notwithstanding Stone's ineffectiveness claim, as discussed below), and any disclosure of privileged documents may well subject Attorney Villa to professional sanction.

No authority exists for the government's second request, an order which would require Attorney Villa "to submit to an interview" by the prosecutor. The Federal Rules of Criminal and Civil Procedure permit formal **depositions**. They do not allow informal sit-downs absent the interview's opponent.[4] Quite the opposite, the rules contemplate the presence of the petitioner's counsel (perhaps even the petitioner himself) and the opportunity for objection and cross-examination. F. R. Crim. P. 15(a)(1)("A party may move that a prospective witness be deposed in order to preserve testimony for trial"); 15(c)(1)("The officer who has custody of the defendant must produce the defendant at the deposition and keep the defendant in the witness's presence during the

---

[4]        None of the Rule 6 cases cited by the government (at 2) involve an informal interview by the prosecutor: *Pinson*, 584 F.3d at 978-979 (district court ordered attorney "to provide an **affidavit** addressing the issues raised in defendants [sic] § 2255 Motion," an order that the appellate court later declared "troubling"); *Lott*, 424 F.3d at 448 (district court authorized respondent to **depose** and seek production of documents from trial counsel, among other persons); *Bittaker*, 331 F.3d at 717 n. 2 (district court entered protective order after allowing respondent's motion to discover files "and conduct **depositions** of trial counsel"); *Johnson*, 256 F.3d at 1168 n. 4 (district court conducted *in camera* hearing and then ordered **production of counsel's notes under seal**, which were also reviewed *in camera*). *Desir*, 273 F.3d at 44-45, involves a challenge on appeal to counsel's **testimony** at a hearing on a new trial motion. *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974), and *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967), involve challenges to counsel's **testimony** at evidentiary hearings held on the petitioners' § 2255 claims.

examination, unless the defendant: (A) waives in writing the right to be present; or (B) persists in disruptive conduct justifying exclusion..."); 15(e)(2)("The scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial"); 15(g)("A party objection to deposition testimony or evidence must state the grounds for the objection during the deposition"); F. R. Civ. P. 30(b)(1)("A party who wants to depose a person by oral questions must given reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address..."); 30(c)(1)("The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615. After putting the deponent under oath or affirmation, the officer must record the testimony by the method designated under Rule 30(b)(3)(A)..."); 30(b)(2)("An objection at the time of the examination -- whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition -- must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection..."). The protections afforded Attorney Villa and Stone by these discovery rules, which the government's requested order would circumvent, are critical. Both Attorney Villa and Stone should have the opportunity to object to government counsel's inquiries and Stone should be afforded the right to cross-examine Attorney Villa.[5]

In sum, the government's motion for discovery fails to satisfy Rule 6's requirements, and should be denied. Even if it did not, Rule 6 directs that court-ordered discovery be conducted in accordance with the Federal Rules of Criminal or Civil Procedure, and no rule provides the authority

---

[5]   At the very least, Stone's present counsel should be able to participate in any interview of Attorney Villa, either telephonically or in person.

for an order requiring Attorney Villa to submit to an informal interview by government counsel. The motion should be denied for this reason as well.

### B.   The Government's Motion Is Over-Broad

Putting aside these procedural problems, the government's motion is fatally over-broad. There can be little dispute that a *habeas* petitioner who alleges that his attorney provided ineffective assistance implicitly waives his attorney-client privilege. Yet that waiver is not all-encompassing. An implicit waiver must be construed "no broader than needed to ensure the fairness of the proceedings," *Lott*, 424 F.3d at 453; "narrowly" and "carefully" circumscribed to require the disclosure of only those materials and communications relevant to the alleged ineffectiveness. *Pinson*, 584 F.3d at 978 (privilege waived "with respect to communications with his attorney necessary to prove or disprove" claim). Stone argues in his petition that Attorney Villa provided constitutionally ineffective assistance of counsel in failing to investigate and present mitigating evidence, **specifically an evaluation by a mental health professional**, which would have revealed that Stone presents a minimal risk of re-offending. (Document 27-1, 38-54). An evaluation might also have provided the sentencing court with important expert incite into Stone's behavior and salient characteristics and history, including the fact that he was homeless for a time; that he was molested at 15; that he was addicted to prescription pain killers; that he and his then-girlfriend engaged in role-playing and had sex in public places; that he contacted "brownhairedgirl_1" as part of his pattern of seeking pictures of teenage girls; and, that he exposed himself to "her" as a result of his interest in exhibitionism. (Document 27-1, 60-61).

Based upon the specific claim of ineffectiveness, the government is obviously not entitled to discover "all records in [Attorney Villa's] possession, or available to her, concerning the personal,

family or mental health background of" Stone, or to question Attorney Villa about the same. (Document 38, 1, 3). Only those records that were actually reviewed by Attorney Villa and the confidential communications contemplated during her preparation of Stone's defense at sentencing can be at all relevant in this *habeas* proceeding. Materials and information that had absolutely no part in her decision-making, because she did not review them or because they came to her attention only after she filed Stone's sentencing memorandum, on March 25, 2008, are besides the point, even though they may very well be "in her possession, or available to her" and known to her now. Moreover, it should not be left to the prosecution, in picking through counsel's case file or preparing to depose her, to determine precisely which privileged materials and information from the file or within her knowledge "are relevant to Stone's claim." Attorney Villa is in a position to identify those materials from her case file that influenced her decisions. After Attorney Villa has culled the records (in response to subpoena), the Court should conduct an *in camera* review to determine whether and to what extent they are relevant. The parameters of inquiry made during a deposition (conducted in accordance with F. R. Crim. P. 15 or F. R. Civ. P. 30) should also be set by the Court, and not the government. *See Johnson*, 256 F.3d at 1168 n. 4, 1178-1180 (describing district court's measures to ensure narrowest waiver of privilege).

Stone maintains that the government's motion does not entitle it to discovery under Rule 6. However, to the extent that the Court finds differently, Stone submits further that the government's request for discovery is over-broad. In light of Stone's § 2255 argument, and to best preserve his attorney-client privilege, any discovery should be limited to materials and information predating March 25, 2008, and concerning only these areas of inquiry:

(1)      Whether or not Attorney Villa consulted with a mental health professional,

14

and enlisted a mental health professional to conduct an evaluation of Stone;

(2)     If so, whether or not Attorney Villa discussed with a mental health professional and with Stone the results of the evaluation and the decision to withhold it at sentencing;

(3)     Whether or not Attorney Villa was aware that Stone was homeless at one time;

(4)     Whether or not Attorney Villa was aware that Stone was molested at 15 years old;

(5)     Whether or not Attorney Villa was aware of Stone's addiction to prescribed pain killers;

(6)     Whether or not Attorney Villa was aware that Stone and his then-girlfriend engaged in role-playing and had sex in public places.

## III.     STONE'S MOTION FOR A PROTECTIVE ORDER.

In the event that the Court determines that the government is entitled to discovery and Stone has implicitly waived his attorney-client privilege as to particular materials in Attorney Villa's file (disclosed pursuant to subpoena) and communications (divulged at a deposition), Stone hereby moves for a protective order prohibiting the government from using or disseminating the discovered materials and communications for any purpose other than to litigate the § 2255 petition, including at any re-sentencing proceeding. Stone proposes the following language:

> All discovery granted to the United States Attorney for the District of Maine shall be deemed to be protected. The documents and information may be used only by the United States Attorney for the District of Maine, and only for the purpose of any proceedings incident to litigating the claims presented in the petition under 28 U.S.C. § 2255 pending before this Court. Disclosure of the contents of the documents or the documents themselves or the substance of protected information may not be made to any persons or agencies, including any other law enforcement agencies or prosecutorial personnel or agencies. This order shall continue in effect after the conclusion of the *habeas* proceedings and specifically shall apply in the event of a re-sentencing of the petitioner.

15

*See Bittaker*, 331 F.3d at 717 n. 1. *See also United States v. Nicholson*, No. 2:01-CR-00041-RBS-1, Docket No. 117 (January 21, 2011). A protective order in this form is appropriate and necessary. *Nicholson*, 611 F.3d at 217, citing *Bittaker*, 331 F.3d at 722-723 ("The district court was entirely justified in entering the protective order that is the subject of this appeal; indeed, it would have abused its discretion had it done otherwise").

## CONCLUSION

For all of the reasons set forth in Section II, the Court should **DENY** the government's motion for an order (1) directing Attorney Villa to release her client file; and, (2) to submit to an interview by the prosecutor.

As set forth in Section III, the Court should **GRANT** Stone's motion for a protective order.

<div style="margin-left:auto">

Respectfully submitted,
**ADAM STONE**
By his attorneys,


/s/Charles W. Rankin
Charles W. Rankin, BBO #411780
crankin@rankin-sultan.com
Kerry A. Haberlin, BBO #672649
khaberlin@rankin-sultan.com
Rankin & Sultan
151 Merrimac Street
Boston, MA 02114
(617)720-0011

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the Electronic Filing System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and that a paper copy will be sent, via U.S. mail, first class, postage prepaid, to Virginia Villa, Esq., Assistant Federal Defender, 23 Water Street, Suite 206, Bangor, Maine, on May 16, 2011.

/s/Charles W. Rankin
Charles W. Rankin

17