UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | 1:08-cr-00006-JAW |
| | ) | 1:11-cv-00007-JAW |
| ADAM STONE, | ) | |
| | ) | |
| Movant. | ) | |

## ORDER DENYING GOVERNMENT'S MOTION FOR DISTRICT COURT TO RECONSIDER ORDER OF MAGISTRATE JUDGE

This dispute arises from Adam Stone's § 2255 petition collaterally attacking the sentence the Court imposed on April 9, 2008. Mr. Stone grounds his § 2255 petition on allegations of the ineffective assistance of his counsel, Assistant Federal Defender Virginia Villa. To aid in responding to Mr. Stone's petition, the Government moved for an order compelling Attorney Villa to turn over records relevant to the ineffective assistance claim and to submit to an informal interview by Government counsel. Mr. Stone objected and asked that any discovery be conducted pursuant to the Rules Governing Section 2255 Cases. Magistrate Judge Kravchuk granted the Government's motion in part ordering Attorney Villa to produce documents related to Mr. Stone's § 2255 petition and to submit to a deposition with Government and Petitioner's counsel. The Government appealed the Magistrate Judge's Order alleging manifest errors of law and fact. Finding the Magistrate Judge properly found facts and applied the law, the Court denies the Government's motion and affirms the Magistrate Judge's Order.

## I.  BACKGROUND

### A.  Initial Proceedings, Sentencing, and Appeal

On January 9, 2008, after waiving indictment, Adam Stone pleaded guilty to a one-count information charging he knowingly transported and shipped child pornography in interstate commerce. *Waiver of Indictment* (Docket # 1); *Information* (Docket # 2); *Minute Entry* (Docket # 7).  On April 9, 2008, the Court sentenced Mr. Stone to 210 months imprisonment, five years of supervised release, and a special assessment of $100. *J.* (Docket # 12).  Mr. Stone timely appealed, claiming that the Court improperly understood its sentencing discretion under *Kimbrough v. United States*, 552 U.S. 85 (2007) and that it imposed a substantively unreasonable sentence. *Notice of Appeal* (Docket # 13); *Op. of United States Ct. of Appeals* at 9 (Docket # 21) (*Op. of U.S.C.A.*).  The Court of Appeals affirmed Mr. Stone's sentence.[1] *J. of United States Ct. of Appeals* (Docket # 22).

### B.  Section 2255 Motion

On January 6, 2011, Mr. Stone moved to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255. *Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Docket # 27) (*Mot. to Vacate*).  In his § 2255 petition, Mr. Stone alleged ineffective assistance of counsel. *Mot. to Vacate* at 4.  Specifically, he claimed:

---

[1] While affirming and holding no error of law or abuse of discretion occurred in Mr. Stone's sentencing as "[s]entencing is primarily the prerogative of the district court[] and the sentence imposed in this case is within permissible limits," the First Circuit added a coda. *Op. of U.S.C.A.* at 30.  The closing part of the appellate decision stated, "[W]e wish to express our view that the sentencing guidelines at issue are in our judgment harsher than necessary" and "[w]ere we collectively sitting as the district court, we would have used our *Kimbrough* power to impose a somewhat lower sentence." *Id.*

His appointed attorney, Virginia Villa, provided ineffective assistance during the sentencing proceeding, failing to investigate and then present substantial mitigating evidence. Namely, defense counsel did not procure a psychological evaluation of Stone, which establishes, *inter alia*, that he poses minimal risk of re-offending. But for counsel's deficient performance, Stone's sentence probably would have been less than 210 months.

*Id.* Attach. 1 at 13 (*Mem. of Law in Support of Pet. For Relief Pursuant to 28 U.S.C. § 2255*). On January 7, 2011, Magistrate Judge Kravchuk ordered the Government to answer the § 2255 motion. *Order to Answer* (Docket # 31).

### C. Government's Motion for Order Directing Attorney Villa to Release Client Files and Submit to an Interview

To assist its defense against Mr. Stone's § 2255 petition claiming ineffective assistance of counsel, the Government asked Attorney Villa to participate in an informal inquiry:

Consistent with historical undisputed practices in the District of Maine for resolving Sixth Amendment challenges to counsel's performance, during an informal inquiry on April 7, 2011, Government counsel asked Attorney Villa to provide records and information concerning her representation of Stone that would enable the Government to defend against Stone's Sixth Amendment challenge. In a telephone call on or about April 12, 2011, Attorney Villa declined Government counsel's informal request.

*Gov't's Reply to Pet'r's Opp'n to Mot. for Ct. Order Directing the Release of Client Files and to Submit to Interview by Gov't Counsel* at 2 (Docket # 42) (*Gov't's Reply to Pet'r's Opp'n.*). On April 27, 2011, the Government moved for an order directing Attorney Villa to release Mr. Stone's client files and to submit to an interview with government counsel in order to aid in defending against the claim of ineffective assistance of counsel. *Gov't's Mot. for Ct. Order Directing the Release of Client Files*

*and to Submit to Interview By Gov't Counsel* at 1 (Docket # 38) (*Gov't's Mot. for*

*Release of Files and Interview*).  Pursuant to Rule 6 of the Rules Governing Section

2255 Cases,[2] the Government requested:

> [Attorney Villa] (1) . . . provide to [the Government] all records in her
> possession, or available to her, concerning the personal, family, or
> mental health background of movant Adam Stone that are relevant to
> Stone's claim that Attorney Villa violated his rights "because she failed
> to adequately investigate and then present mitigating expert evidence,
> including that Stone presents a minimal risk of reoffending"; and (2) . .
> . submit to an interview by Government counsel with respect to the
> claim raised in Stone's Section 2255 motion.

*Id.* at 1.  In support, the Government argued that the requested records and

communications "are relevant" to Mr. Stone's § 2255 petition and will "enable the

Government to respond to the petition."  *Id.* ¶ 2.  The Government also asserted

that by alleging ineffective assistance of counsel, Mr. Stone "waive[d] any right to

invoke the attorney-client privilege against communications with the attorney

whose representation is challenged."  *Id.* ¶ 3.

In response, Mr. Stone contended that the Government's motion violated

Rules 6(a) and (b) of the Rules Governing Section 2255 Cases and was "fatally over-

broad."  *Pet'r's Opp'n to Gov't's Mot. for Ct. Order Directing Att'y Virginia Villa to*

---

[2] Rules 6(a) and (b), controlling discovery in § 2255 proceedings, state:

> **(a) Leave of Court Required.**  A judge may, for good cause, authorize a party to
> conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure,
> or in accordance with the practices and principles of law.  If necessary for effective
> discovery, the judge must appoint an attorney for a moving party who qualifies to
> have counsel appointed under 18 U.S.C. § 3006A.

> **(b) Requesting Discovery.**  A party requesting discovery must provide reasons for the
> request. The request must also include any proposed interrogatories and requests for
> admission, and must specify any requested documents.

RULES GOVERNING SECTION 2255 CASES R. 6(a)-(b) (1976) (amended 2004).

*Release Client Files and Submit to an Interview, Pet'r's Mot for a Protective Order* at 2 (Docket # 41) (*Pet'r's Resp. to Mot.*). Mr. Stone argued that the Government failed to "set[] forth 'good cause' for discovery [and] list[] with any modicum of particularity the documents the government seeks or the questions it wishes to pose." *Id.* Furthermore, Mr. Stone contended that "[d]iscovery, if . . . permitted by the Court, must be conducted in accordance with the Federal Rules of Criminal and Civil Procedure." *Id.* at 2. Those rules "permit formal *depositions*," not the "informal sit-down[] absent the interview's opponent" proposed by the Government. *Id.* at 11 (emphasis in original). Petitioner's counsel also asserted that "the motion is fatally overbroad" because Mr. Stone "has not waived wholesale attorney-client privilege" and

> any waiver . . . does not encompass all records in [Attorney Villa's] possession, or available to her or confidential communications concerning the personal, family, or mental health background of Stone.

*Id.* at 2 (internal quotation marks omitted). Finally, should the Magistrate Judge rule in favor of the Government, Mr. Stone moved for a protective order prohibiting the " us[e] or disseminat[ion of] the information disclosed by Attorney Villa for any purpose other than to litigate the instant § 2255 petition, and especially during any re-sentencing proceeding." *Id.*

The Government replied on May 31, 2011 explaining with greater particularity the records and communications it is seeking from Attorney Villa:

> [T]he Court should authorize Villa to disclose . . . information, documents, and communication regarding:

1) Whether or not Attorney Villa consulted with a mental health professional and enlisted a mental health professional to conduct an evaluation of Stone, including the results of that consultation;

2) If Attorney Villa did consult with a mental health professional, whether she conferred with Stone about the results of the evaluation and the decision to use or withhold the results of the evaluation at sentencing and the basis for that decision;

3) Whether or not Attorney Villa was aware that Stone was homeless at [] one time, whether she consulted with Stone about that information, and what decision, if any, was made concerning use of that information at sentencing, and the basis for the decision to use or withhold it;

4) Whether or not Attorney Villa was aware that Stone was molested at 15 years old, whether she consulted with Stone about that information, and what decision, if any, was made concerning use of that information, and the basis for the decision to use or withhold it;

5) Whether or not Attorney Villa was aware of Stone's addiction to prescribed pain killers, whether she consulted with Stone about that information, and what decision, if any, was made concerning use of that information, and the basis for the decision to use or withhold it[];

6) Whether or not Attorney Villa was aware that Stone and his then-girlfriend engaged in role-playing and had sex in public places; whether she consulted with Stone about that information, and what decision, if any, was made concerning use of that information, and the basis for the decision to use or withhold it[;]

7) Information, documents and communications Villa reasonably believes are necessary to establish a defense in Villa's behalf in responding to the allegations made in the §[]2255 petition concerning the Sixth Amendment adequacy of Villa's representation of Stone.

*Gov't's Reply to Pet'r's Opp'n.* at 7-8. Relying heavily on the Maine Rules for Professional Conduct[3] and arguments related to judicial economy and efficiency, the Government asserted that the Court should: 1) authorize Attorney Villa to disclose specified information, documents and communications; 2) permit Attorney Villa to review the requested disclosures "with Government counsel informally[] and not by way of formal deposition;" and 3) deny Mr. Stone's motion for a protective order as "the Government voluntarily agrees to make use of any information, documents, and communications voluntarily disclosed . . . exclusively for purposes of responding to Stone's claim [of ineffective assistance of counsel]." *Id.*

---

[3] Rule 1.6 of the Maine Rules for Professional Conduct states, in part:

> (a) A lawyer shall not reveal a confidence or secret of a client unless, (i) the client gives informed consent; (ii) the lawyer reasonably believes that disclosure is authorized in order to carry out the representation; or (iii) the disclosure is permitted by paragraph (b).
>
> (b) A lawyer may reveal a confidence or secret of a client to the extent the lawyer reasonably believes necessary;
>
> . . . .
>
> (5)  to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or
>
> (6) to comply with other law or a court order.

D. ME. RULES OF PROF'L CONDUCT R.1.6 (2002). Comment 10 to Rule 1.6 explains, "Where a legal claim or disciplinary charge alleges . . . misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense." *Id.* Rule 1.6 cmt. 10. Based upon Rule 1.6 and the attendant commentary, the Government reasons that "the Maine Bar Rules authorize Villa voluntarily to disclose information that is reasonably necessary to establish a defense to the Sixth Amendment claim." *Gov't's Reply to Pet'r's Resp.* at 5.

### D. Magistrate Judge's Order

On June 6, 2011, Magistrate Judge Kravchuk issued an order granting in part the Government's motion seeking information, documents, and communications from Attorney Villa. *Order* (Docket # 44). While concluding that under Rule 6 of the Rules Governing Section 2255 Cases that "the United States . . . fairly articulated reasons for allowing it to have discovery in some form," the Magistrate Judge also determined "that Stone's attorney . . . presented the best approach for moving forward with this particular 28 U.S.C. § 2255 motion." *Id.* at 2. The Magistrate Judge permitted the Government to depose Attorney Villa with Mr. Stone's counsel present and outlined the deposition process:

> Given that Stone is currently represented by private counsel, the most reasonable course is to allow Stone and the United States to depose Stone's federal defender. In that context the federal defender would have her files available and the attorneys for Stone and the United States could filter through what disclosure is fair game for purposes of the 28 U.S.C. § 2255 proceeding, accepting as guidance the broad limitations set forth in this order. This process would then allow the Assistant United States Attorney to pursue the inquiries necessary to defend the judgment. As opposed to a private interview between the United States Attorney and the federal defender, this process will additionally provide a transparent review of the facts underlying this § 2255 ineffective assistance of counsel challenge and clarify if further proceedings are necessary in order to fairly resolve this motion.

*Id.* at 4. Continuing, the Order stated that Attorney Villa "may turn over to both parties the records she deems most relevant prior to the deposition in order to focus the issues" and "expedite the deposition process." *Id.* at 4-5. If "a § 2255 discovery dispute [should] arise in the context of [the] deposition," the Magistrate Judge assured the parties "that the court is at their disposal." *Id.* at 5. Noting that the

Government "relies heavily on the Maine Bar of Overseers' rules pertaining to disclosures," *id.* at 4 n.2, the Magistrate Judge "expect[ed] that [the deposition process could] proceed in full compliance with the state and national professional bar rules/standards that govern attorney/client disputes," *id.* at 4.

In reaching this determination, the Magistrate Judge found the decision in *United States v. Pinson*, 584 F.3d 972 (10th Cir. 2009) "very useful" because "very little First Circuit case law [addresses] Rule [6 of the Rules] Governing Section 2255 Proceeding[s]." *Id.* at 2. The Magistrate Judge quoted excerpts from *Pinson*, which support the Government's contention that by alleging Attorney Villa provided ineffective assistance of counsel, Mr. Stone "waive[d] the attorney-client privilege *with respect to those communications*." *Id.* (emphasis added) (quoting *Pinson*, 584 F.3d at 977-78). However, the Magistrate Judge also noted that *Pinson* stated that '[t]o hold [the habeas petitioner] waived his attorney-client privilege with respect to his § 2255 claims . . . does not end the analysis.' *Id.* (quoting *Pinson*, 584 F.3d at 978). A court 'must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.' *Id.* (quoting *Pinson*, 584 F.3d at 979 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003))). Applying *Pinson* to "the current dispute," the Magistrate Judge "concluded that . . . the 28 U.S.C. § 2255 movant does have a credible argument that the United States should be limited in its efforts to seek Rule 6 discovery . . . ." *Id.* at 3-4. Thus, the Order directed Attorney Villa to submit to a deposition by the Government and Mr. Stone's counsel with the "inquiry

. . . limited to the questions material to Stone's [ineffective assistance of counsel allegation]." *Id.* at 4.

### E.    Government's Appeal of the Magistrate Judge's Order

On June 9, 2011, the Government appealed the Magistrates Judge's decision claiming "the order was based on a manifest error of law and fact." *Gov't's Mot. Pursuant to Local Rule 7(g) for Dist. Ct. to Reconsider Order of Magistrate Judge Dated June 6, 2010* at 1 (Docket # 46) (*Gov't's Appeal*). The Government requested the Court vacate the Magistrate Judge's order and enter a new order:

> [T]his Court should . . . enter an order permitting Attorney Villa voluntarily to disclose to the Government information, including her recollection, records, and communications of her representation of Stone that relate to Stone's claim that Villa rendered constitutionally ineffective assistance at sentencing because she failed to adequately investigate and then present mitigating expert evidence, including that Stone presents a minimal risk of reoffending.

*Id.* at 13-14 (quotation marks omitted). Once again adding specificity to the discovery request, the Government moved for disclosure of records and communications related to the same topics listed in its May 31, 2011 reply. *Id.* at 14; *Gov't's Reply to to Pet'r's Opp'n.* at 7-8; *see supra* Part I.C.

In support of the appeal, the Government claimed the Magistrate Judge committed manifest errors of law and fact by requiring Attorney Villa's deposition with both Government and Petitioner's counsel present. First, the Government says she committed a manifest error of law because the Order "fails to acknowledge the limited scope of the attorney-client privilege," which "applies only in the context of a testimonial proceeding and covers only what the attorney and client

communicated to each other in the context of obtaining legal advice." *Id.* at 7.
Here, the Government observes that it "never requested a testimonial proceeding at
which Attorney Villa [would] be called as a witness." *Id.* Instead, the Government
moved for disclosure of Attorney Villa's records and communications "without
holding an evidentiary hearing at all." *Id.* According to the Government, the
Magistrate Judge "fail[ed] to distinguish between information demonstrating what
Villa did – as opposed to what she or Stone said to each other in the course of her
representation," and, therefore, committed "a manifest error of law." *Id.* at 7-8.

The Government argues a second manifest error of law occurred because the
Magistrate Judge's order

> fails to distinguish between the testimonial attorney-client privilege on
> one hand and the ethical considerations concerning the voluntary
> disclosure of information on the other and fails entirely to address the
> Government's arguments with respect to the latter authority.

*Id.* at 8. Rule 1.6 of the Maine Rules for Professional Conduct, according to the
Government, allows for voluntary and informal disclosure and does not require
"only . . . formal proceedings such as [the] deposition [ordered by the Magistrate
Judge]." *Id.; see supra* note 3.

Finally, the Government asserts:

> The Magistrate Judge . . . erred as a matter of fact by stating that ". . .
> it is not necessarily an onerous use of judicial resources to proceed in
> this fashion in the context of this particular case" by requiring the
> production of documents in connection with a deposition the
> Magistrate Judge would be available to supervise.

*Id.* at 11 (quoting *Order* at 5). Warning that many § 2255 petitioners allege
ineffective assistance of counsel, the Government contends that the deposition "will

be an onerous and wasteful use of judicial resources and the Government's resources as well." *Id.* at 12. However, the Government asserts that "permitting former counsel to disclose information voluntarily [will] expedite[] significantly the resolution of §[]2255 claims." *Id.*

On June 29, 2011, Mr. Stone's counsel responded. Petitioner's counsel dismissed the Government's argument concerning the Maine Rules of Professional Conduct as "completely beside[] the point" because: 1) "Attorney Villa . . . refused to disclose [the requested] information . . . as was her right . . . under [Maine's ethical rules];" and 2) Rule 6 of the Rules Governing Section 2255 Cases "controls the government's discovery motion, not the Maine Rules of Professional Conduct." *Pet'r's Opp. to the Gov't's Mot. for the Dist. Ct. to Reconsider Disc. Order of the Magistrate Judge* at 11 -12 (Docket # 47). According to Mr. Stone's counsel, the § 2255 Rules "require formal depositions." *Id.* at 12 (emphasis removed).

As to the Government's argument that the Magistrate Judge incorrectly applied the attorney-client privilege – a testimonial privilege – to an informal interview, counsel responds that this argument is "ultimately beside[] the point" because "Rule 6 does not permit an informal interview by government counsel to the exclusion of the petitioner's representative . . . ." *Id.* at 13. Furthermore, Mr. Stone's attorneys assert that the "government . . . does not intend to confine itself in questioning Attorney Villa to information demonstrating what [she] did – as opposed to what she or Stone said to each other . . . ." *Id.* at 14 (internal quotation marks omitted). Instead, "the government seeks permission to inquire as to

whether [Attorney Villa] consulted with Stone about [particular] information [and decisions made based upon that information].” *Id.* (internal quotation marks omitted). This inquiry, argues Mr. Stone, “obviously crosses the line between her actions and protected, confidential communications.”[4] *Id.*

Finally, Mr. Stone argues that “[t]he government’s claim of burden and waste, recast as one of factual error, is overblown.” *Id.* According to Mr. Stone, the Magistrate Judge “was careful to limit [the] Order to the unique circumstances

---

[4] Mr. Stone’s attorneys argue that the Federal Rules of Civil or Criminal Procedure control discovery in § 2255 proceedings. Federal Rule of Criminal Procedure 16(b)(2) concerning information *not* subject to disclosure states:

> Except for scientific or medical reports, Rule 16(b)(1) does not authorize disclosure of:
>
> > (A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or
> >
> > (B) a statement made to the defendant, or the defendant's attorney or agent, by:
> >
> > > (i) the defendant;
> > >
> > > (ii) a government or defense witness; or
> > >
> > > (iii) a prospective government or defense witness.

FED. R. CRIM. P. 16(b)(2). Thus, if Rule 16(b)(2) applies to discovery in § 2255 proceedings, then communications between Attorney Villa and Mr. Stone would be protected and subject to disclosure only if, and to the extent, Mr. Stone waived that privilege. *Cf. Pinson*, 584 F.3d at 977-978 (“When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege *with respect to those communications*.” (emphasis added)). On the other hand, an attorney’s actions do not necessarily qualify as communications. *Cf. United States v. Morrell-Corrada*, 343 F.Supp. 2d 80, 86 (D.P.R. 2004) (“[T]he privilege only protects attorney-client communications, it does not protect disclosure of the underlying facts.” (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981))). For purposes of the attorney-client privilege, distinguishing “communications” from “actions” relating to the underlying facts can prove challenging. *See e.g.* 24 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5484 at 164 (1986 Supp. 2011) (“One must . . . distinguish between a holding that the actions of the client are themselves privileged communications and a holding that the privilege gives the client the right to refuse to testify to actions that would provide circumstantial evidence of other privileged communications; e.g. barring inquiry into what the client did to prepare for her testimony on the grounds that this would allow others to infer what advice she received from her attorney.”).

presented by Stone's § 2255 [petition] which involves a discrete claim of ineffectiveness." Mr. Stone concludes by repeating his request that Petitioner's counsel participate in any Government interview of Attorney Villa, if only telephonically, and that the interview "be confined to the specific areas of inquiry set forth in his opposition to the discovery motion." *Id.* at 16.

The Government replied on June 30, 2011 raising numerous policy arguments against the Magistrate Judge's Order. *Gov't Reply to Pet'r's Resp. to Mot. for Ct. Order Directing the Release of Client Files and to Submit to Interview by Gov't Counsel* (Docket # 48) (*Gov't Reply to Pet'r's Resp.*). According to the Government, the procedures authorized for the instant § 2255 case contradict the "longstanding tradition of collegiality within the bar of the District of Maine" and are "costly . . . , inefficient, time-consuming, and counter-productive." *Id.* at 2. The Government notes that "99% of §[]2255 cases are handled by petitioners who proceed *pro se*" and it raises the following concern:

> To adopt Stone's procedure would either discriminate against petitioners who, unlike Stone, cannot afford representation on a §[]2255 petition or would require the Court - and the public - to bear the cost of providing counsel to every *pro se* §[]2255 litigant whose former counsel resists assisting the Government in defending that attorney's performance. An issue would also arise as to how the petitioner himself – who in most cases is incarcerated out-of-state – would participate in the disclosure proceeding. Should the petitioner's presence be required, there would be additional costs associated with producing him from the facility where he is held.

*Id.* at 2-3. The Government's related concerns involve increased demands on the Court and delay in resolving § 2255 proceedings due to the "interject[ion of] formal discovery procedure in virtually every §[]2255 case . . . ." *Id.* at 3. Finally, the

Government warns that requiring formal depositions in cases similar to Mr. Stone's might force the Government "[i]n the absence of voluntary cooperation by the former lawyer . . . to concede that counsel's performance was constitutionally deficient." *Id.* Such a concession could require the Government or Court to "refer the matter to Bar Counsel" and raise questions as to "whether that lawyer could continue to be appointed." *Id.*

On July 5, 2011, Mr. Stone filed his sur-reply. First, he argued that the procedures requested by the Petitioner and ordered by the Magistrate Judge adhere to the Rules Governing Section 2255 Cases as promulgated by the U.S. Supreme Court. Mr. Stone correctly points out "that Rule 6(a) actually contemplates under certain circumstances *the appointment of counsel at the discovery stage* for the *pro se* § 2255 petitioner."[5] *Pet'r's Resp. to the Gov't's Reply* at 3 (Docket # 49) (emphasis in original). Second, Mr. Stone asserted that the Magistrate Judge "was careful to limit her discovery order to the instant § 2255 petition." *Id.* Petitioner's final argument dismissed "the government's policy concerns" given "the legal reality" that "[n]o authority exists for the government's demand for an informal interview of Attorney Villa, to the exclusion of Stone['s] counsel." *Id.* 3-4.

## II. LEGAL STANDARD

### A. Standard of Review

Under 28 U.S.C. § 636(b)(1)(A), a district judge is authorized to "reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *See* FED. R. CIV. P. 72(a) ("Nondispositive

---

[5] *See supra* note 2.

Matters"). The "clearly erroneous" standard means that this Court "must accept both the trier's findings of fact and conclusions drawn therefrom unless, after scrutinizing the entire record, [it forms] a strong, unyielding belief that a mistake has been made." *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (internal quotation marks omitted) (citation omitted). When "review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

### B. Discovery Under § 2255

A federal habeas corpus petition under 28 U.S.C. § 2255 allows federal prisoners to collaterally attack their imposed sentence. *See* 28 U.S.C. § 2255; *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000). In 1976, Congress adopted rules of practice promulgated by the U.S. Supreme Court governing habeas proceedings. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); Pub. L, No 94-426, 90 Stat. 1334 (1976). Rule 6, controlling discovery in § 2255 proceedings, provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, *or in accordance with the practices and principles of law*." RULES GOVERNING SECTION 2255 CASES R. 6(a) (1976) (amended 2004) (emphasis added). Parties requesting "discovery must provide reasons for that request," "include any proposed interrogatories and requests for admission," and "specify any requested documents." *Id.* Rule 6(b).

The Advisory Committee Notes prove particularly useful in determining a district court's discretion under Rule 6. With regard to discovery under § 2255, the Notes state that "the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the 'usages and principles.'" RULES GOVERNING SECTION 2254 CASES, R. 6 cmt. (1976) (amended 2004).[6] The Notes explain, "[Rule 6] contains very little specificity as to what types and methods of discovery should be made available to the parties in a habeas proceeding, or how, once made available, these discovery procedures should be administered." *Id.* Rather than providing specificity, "[t]he purpose of this rule is to get some experience in how discovery would work in actual practice by letting district court judges fashion their own rules in the context of individual cases" in order to allow for "more specific codification" in the future. *Id.* Thus, under the Rules, district courts retain "substantial discretion in the conduct of [§§ 2254 and 2255 cases]." *Lochnar v. Thomas*, 517 U.S. 314, 326 (1996).

### C. Section 2255 Petitioners Claiming Ineffective Assistance of Counsel and Waiver of the Attorney-Client Privilege

Section 2255 petitioners alleging ineffective assistance of counsel waive, to a limited extent, attorney-client privilege. *Pinson*, 584 F.3d at 977-978; *In re Lott*, 424 F.3d 446, 452-53 (6th Cir. 2005); *Bittaker,* 331 F.3d at 718-19; *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001); *see also Sena v. Spencer*, No. 1:05-

---

[6] Section 2254 provides remedies in federal courts for prisoners in state custody. 28 U.S.C. § 2254. Rule 6 of the Rules Governing Section 2254 Cases is nearly identical to Rule 6 for § 2255 proceedings. *Compare* RULES GOVERNING SECTION 2254 PROCEEDINGS R. 6 (1976) (amended 2004) *with* RULES GOVERNING SECTION 2255 PROCEEDINGS, R. 6 (1976) (amended 2004). The Advisory Committee's Notes discussion of § 2254 discovery rules are "fully applicable to discovery under . . . § 2255 motions." RULES GOVERNING SECTION 2255 PROCEEDINGS R. 6 cmt. (1976) (amended 2004).

CV-10381-DPW, 2006 WL 568306, 6 n.7 (D. Mass. Mar. 8, 2006). This implied waiver rests on the "fairness principle" that "prevent[s] a party from using the privilege as both a shield and a sword." *Bittaker*, 331 F.3d at 719; *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003) [hereinafter *XYZ Corp.*] ("[Implied] waivers are almost invariably premised on fairness concerns."). A court must be careful to "impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker*, 331 F.3d at 720. In habeas petitions claiming ineffective assistance of counsel, waiver is limited to materials concerning the alleged failure to provide the defendant with adequate representation. *Pinson*, 584 F.3d at 972 ("While compelling a new declaration or the production of notes in a [§ 2255 case involving a claim of ineffective assistance of counsel] is not per se unreasonable, such a requirement should ideally be carefully tailored to protect prisoners' Sixth Amendment rights." (citing *Johnson*, 256 F.3d at 1168 n.4)); *Bittaker*, 331 F.3d at 723 ("A narrow waiver rule is also consistent with the interests of the habeas petitioner in obtaining a fair adjudication of his petition and securing a retrial untainted by constitutional errors."); *In re Lott*, 424 F.3d at 454 ("Implied waivers are consistently construed narrowly."); *Johnson*, 256 F.3d at 1168 n.4 ("[I]f the district court found the [attorney-client] communications relevant to accurate resolution of [the habeas petitioner's] ineffectiveness arguments . . . the privilege would not apply and the district court should consider the communications in analyzing [petitioner's] claim of ineffectiveness. [S]uch an approach is entirely proper in these kinds of cases.");

*see also XYZ Corp.*, 348 F.3d at 24 ("When [a defendant alleges ineffective assistance of counsel], the pleader puts the nature of its lawyer's advice squarely in issue, and, thus, communications embodying the subject matter of the advice typically lose protection."); *United States v. Kinsella*, 545 F. Supp. 2d 148, 157 (D. Me. 2008) ("[T]he Court will apply . . . caution in determining the scope of the [implied] waiver" (citing *XYZ Corp.*, 348 F.3d at 22-23)).

## III.  DISCUSSION

### A.  The Magistrate Judge Properly Exercised Discretion Under the Rules Governing Section 2255 Cases by Ordering Attorney Villa's Deposition

The Magistrate Judge properly acted within the bounds of the Rules Governing Section 2255 Cases by ordering Attorney Villa submit to a formal deposition with both Government and Mr. Stone's counsel present.  Under the Rules, a judge may authorize discovery conducted pursuant to "the Federal Rules of Criminal Procedure *or* Civil Procedure *or* in accordance with the practices and principles of law."  RULES GOVERNING SECTION 2255 CASES R. 6(a) (1976) (amended 2004) (emphasis added).  Thus, the Rules provide judges with broad discretion in shaping discovery in § 2255 proceedings.  *See Lochnar*, 517 U.S. at 326.  A formal deposition with both counsel present preceded by disclosure of relevant documents fits within the contours of Rule 6.

For the Court to find that the Magistrate Judge committed a manifest error of law or fact, the Government must demonstrate that the Order requiring a formal deposition of Attorney Villa pursuant to Rule 6 was "clearly erroneous or [was]

contrary to law." FED. R. CIV. P. 72(a). The evidence in the record and the controlling law support the Magistrate Judge's decision and undermine the Government's allegations of manifest error.

### 1. The Magistrate's Order does not improperly expand the scope of the attorney-client privilege

The Government argues that the Magistrate Judge committed a manifest error of law by expanding the scope of attorney-client privilege to apply to a non-testimonial, informal Government interview with Attorney Villa. According to the Government, such an expansion in the scope of the privilege "fail[s] to distinguish between information demonstrating what Villa did – as opposed to what she or Stone said to each other in the course of her representation . . . ." *Gov't's Appeal* at 7-8. Notwithstanding the difficulty in separating Attorney Villa's actions (what she did) from her communications with Mr. Stone (what she said), this argument fails because case law supports a narrow application of implied waiver when § 2255 petitioners allege ineffective assistance of counsel. *See Pinson*, 584 F.3d at 979 (citing *Johnson*, 256 F.3d at 1168 n.4); *Bittaker*, 331 F.3d at 722-24; *In re Lott*, 424 F.3d at 453; *Johnson*, 256 F.3d at 1178 (citation omitted); *see also XYZ Corp.*, 348 F.3d at 24; *Kinsella*, 545 F.Supp. 2d at 157 (citing *XYZ Corp.*, 358 F.3d at 22-23). While limiting implied waivers supports the purpose of the attorney-client privilege in promoting frank discussion between counsel, *see In re Lott*, 424 F.3d at 453 (citing *Bittaker*, 331 F.3d at 722), waiver of the privilege also triggers consideration of constitutional interests. As decisions from the Ninth and Tenth Circuits make clear, limiting implied waivers in habeas cases alleging ineffective assistance of

counsel protects petitioners' Sixth Amendment rights to a fair trial should the petition prove successful resulting in a new trial or resentencing. *Pinson*, 584 F.3d at 979 (citing *Johnson*, 256 F.3d at 1168 n.4); *Bittaker*, 331 F.3d at 723. Thus, an order requiring a formal deposition limited to information material to the habeas petitioner's claim finds support in case law emphasizing the purposes of attorney-client privilege as well as decisions stressing the Sixth Amendment's guarantee to a fair trial.

### 2. The Magistrate Judge's decision does not conflict with the Maine Rules for Professional Conduct

The Government argues a manifest error of law occurred because the Order "fails to distinguish between the testimonial attorney-client privilege . . . and [attorneys'] ethical considerations concerning the voluntary disclosure of information . . . ." *Gov't's Appeal* at 8. Furthermore, the Government contends the Magistrate Judge "fails entirely to address the Government's arguments with respect [to the Maine Rules of Professional Conduct regarding voluntary disclosure]." *Id.* This argument fails for several reasons. For one, the Court finds that the Rules Governing Section 2255 Cases control this dispute, not Maine's Bar Rules. The former, promulgated by the U.S. Supreme Court and adopted by Congress, authorize the Magistrate Judge to permit discovery consistent with "the Federal Rules of Criminal Procedure or Civil Procedure, *or* in accordance with the practices and principles of law." RULES GOVERNING SECTION 2255 CASES R. 6(a) (1976) (amended 2004) (emphasis added). The plain language of the Rule thus

allows for formal depositions, as directed by the Magistrate Judge in this case, as well as other discovery methods.[7]

Secondly, the Order issued by Magistrate Judge Kravchuk does not conflict with, and sufficiently considers, the Maine Rules of Professional Conduct cited by the Government. Rule 1.6(b) states that "[a] lawyer *may* reveal privileged communications with a client," D. ME. RULES OF PROF'L CONDUCT R. 1.6(b) (2002) (emphasis added), in order "to establish a . . . defense on behalf of the lawyer in a controversy between the lawyer and the client . . . ," *id.* Rule 1.6 (b)(5). Here, Attorney Villa denied the Government's request to disclose her communications or client files. While Rule 1.6(b) arguably allowed Attorney Villa to turn over privileged information to the Government absent a court order, the Rules do not require her to do so. The Rules of Professional Conduct do not require Attorney Villa to submit to an informal interview with the Government and, even if they did, the Rules Governing Section 2255 Cases control in this dispute and authorize the Magistrate Judge to order formal depositions. Therefore, the Order gives short, but sufficient, treatment to the Government's Rules of Professional Conduct argument by recognizing that assertion, *Order* at 4. n.2, and concluding that the formal deposition process "can proceed in full compliance with state and national professional bar rules/standards that govern attorney/client disputes," *id.* at 4.

---

[7] Based on the Rule's plain language, the Court also rejects Mr. Stone's argument that the Federal Rules of Criminal and Civil Procedure provide the only means for determining acceptable discovery procedures in § 2255 proceedings. Rule 6(a) clearly permits discovery "under the Federal Rules of Criminal or Civil Procedure, *or in accordance with the practices and principles of law*." *Id.*, Rule 6(a) (emphasis added).

### 3. The Magistrate Judge properly tailored the discovery order to the particular facts of this case

Finally, the Government's averment that the Magistrate Judge committed a manifest error of fact by concluding "that . . . 'it is not necessarily an onerous use of judicial resources to proceed in this fashion in the context of this particular case' by requiring the production of documents in connection with a [formal] deposition" also fails. *See Gov't's Appeal* at 11 (quoting *Order* at 5). The Court understands the Government's concern about potential difficulties should every § 2255 petitioner claiming ineffective assistance receive formal deposition proceedings. However, the Court also recognizes that what could happen in the future should not control the outcome of this particular case under the applicable legal framework provided in the Rules Governing Section 2255 Cases and in case law. The Rules and case law grant judicial officers the authority to order formal depositions in § 2255 proceedings and, in the Court's view, the Magistrate Judge appropriately applied the law to the unique facts of this case where the federal defender refused to turn over documents to the Government and the Petitioner objected to the Government's discovery request.

## IV. CONCLUSION

This order should not be construed as creating a new precedent for the District of Maine and is limited to its facts. The Court agrees with the Government's caution that generally the least intrusive means of obtaining information from former defense counsel – either in the form of document production or affidavits – should be explored first and that a deposition of defense

23

counsel is commonly the last resort. Here, the Magistrate Judge imposed boundaries to the deposition and made it clear that she will be available in the event of a dispute. The Court concludes that the ordered discovery procedure is neither clearly erroneous nor contrary to law.

The Court DENIES the Government's motion and AFFIRMS the decision of the Magistrate Judge.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 12th day of September, 2011