UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ADAM STONE, )<br>)<br>    Movant, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>    Respondent ) | No. 1:08-cr-00006-JAW-1<br>No. 1:11-cv-00007-JAW |

### **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Adam Stone, convicted of transporting child pornography and serving a 210-month sentence, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground of ineffective assistance of counsel at sentencing. Stone argues that his counsel should have presented mitigating expert evidence that he was unlikely to reoffend. Having reviewed the record, I now recommend that the Court deny Stone's motion and enter a summary dismissal of the proceedings without further evidentiary hearing.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

Although no evidentiary hearing has been held, the expanded record before this Court contains the deposition testimony of trial counsel in addition to the trial and appellate court records. There do not appear to be any significant factual disputes, but rather the debate turns on the significance of what did or did not occur. In February 2005, Stone contacted an Internet user identified as a 15-year-old girl. In reality, the user was a police detective. Stone asked her about her sexual history. He talked about masturbation and invited her to view his online photo album containing many images of child pornography. Stone sent her a picture of himself and asked her

---

[1] Although Stone initially requested an evidentiary hearing; see Movant's Mem. of Law, ECF No. 27-1, at 75 (filed January 6, 2011); he later stated that he was no longer seeking such a hearing, instead requesting oral argument. See Movant's Reply, ECF No. 81, at 57 (filed March 29, 2012).

to send him pictures of herself.  Finally, Stone masturbated for her in front of his web camera.  Federal officers then obtained a warrant and searched Stone's residence, seizing a computer containing child pornography that Stone admitted downloading from the Internet.

On January 9, 2008, Stone waived indictment and pleaded guilty to a one-count information charging him with transporting child pornography.  Applying § 2G2.2 of the United States Sentencing Guidelines, Stone had a base offense level of 22 and a total of 18 levels of enhancements because his pornography involved a computer, more than 600 images, sadistic or masochistic behavior, and a prepubescent minor, and he distributed the pornography to a person he believed was a minor.  He received a three-level reduction for acceptance of responsibility, yielding a total offense level of 37.  Because he had no criminal history, his Guideline range was 210 to 240 months, reflecting the statutory maximum of 20 years.

Stone's presentence investigation report[2] indicated that he had a happy childhood and supportive, non-abusive parents with whom he maintained a good relationship.  He was a socially isolated "geek" in school and continued to experience anxiety and paranoid thinking but did not receive therapy.  He drank occasionally and had tried marijuana but did not have a substance abuse problem.  He worked at a variety of jobs and lived with his girlfriend.

At sentencing on April 9, 2008, the Court noted that Stone's Guideline range was "extremely high, if not punitive."  (Sentencing Tr., ECF No. 16, at 40.)  Defense counsel urged the Court to vary from the Guidelines, but the Court declined to do so, explaining that "the Guidelines are a direct reflection of a congressional expression of popular will."  (Tr. 40.)  The Court focused on Stone's sexual activity over the Internet with a person he believed was 15.  In particular, the Court explained:  "I find very disturbing the fact that [Stone] . . . committed a

---

[2] The Court granted the Government's motion to seal the presentence investigation report.  See ECF Nos. 72, 73, 74.  However, the parties discuss the contents of this report in their briefs, and I must consider the report in making this recommended decision.

sexual act and transmitted it over the Internet to someone he thought was a 15-year-old girl." (Tr. 41-42.)  The Court indicated that "there's nothing in [Stone's] history or background that would predict he would be standing in front of this Court facing a prison term of over 17 years. . . . [H]is appearance in this Court today is totally unheralded." (Tr. 42-43.)  Although the Court had "some reservations," it sentenced Stone to 210 months, the low end of the Guideline range, followed by five years of supervised release.  (Tr. 46-47.)

Stone appealed, and the First Circuit affirmed his sentence.  See United States v. Stone, 575 F.3d 83 (1st Cir. 2009).  However, the court noted that if it had been sitting as the district court, it would have "impose[d] a somewhat lower sentence," id. at 97, pursuant to Kimbrough v. United States, 552 U.S. 85 (2007), which permits district courts to vary from the Guidelines on policy grounds.  Stone filed a petition for a writ of certiorari, which was denied.  See Stone v. United States, 130 S. Ct. 1115 (2010).  He then filed his motion to vacate, set aside, or correct his sentence.

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Stone's 28 U.S.C. § 2255 claim is dependent on proving ineffective assistance of counsel under the Strickland v. Washington, 466 U.S. 668 (1984), Sixth Amendment standard and Bell v. Cone, 535 U.S. 685, 695-98 (2002), a case addressing ineffective assistance claims related to sentencing.  "In order to prevail," Stone must show "both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words," Stone "must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting therefrom." Id.  "Moreover, when, as in this case, a petition

3

for federal habeas relief is presented to the judge who presided at the petitioner's [plea and sentencing], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

## DISCUSSION

Stone argues that the performance of his counsel, Virginia Villa, an assistant federal defender, was deficient because she performed an inadequate investigation and did not present mitigating evidence at sentencing. Villa argued that Guideline § 2G2.2 is not empirically grounded, that Stone's conduct did not fit that Guideline, that he was unlikely to reoffend in light of a statistic that 88.3% of first-time offenders like Stone do not do so, and that any risk of recidivism could be addressed by a term of supervised release. Stone contends that these arguments should have been supplemented by empirical evidence in the form of certain studies and scholarly articles that Villa could have presented to the Court. Furthermore, Stone argues that Villa should have obtained a psychological evaluation or testimony by a mental health professional regarding Stone's background and salient characteristics, as well as a risk assessment showing that he was unlikely to reoffend. Stone claims that it would have been easy for Villa to locate an expert, that "[f]unds likely would have been made available" (Movant's Mem. of Law, ECF No. 27-1, at 64), and that there was no risk in using an expert.

In Stone's view, empirical evidence and expert opinion likely would have convinced the Court to vary from the Guideline on policy grounds pursuant to Kimbrough because the Court would have had a more complete understanding of him and would have been assured that he probably would not reoffend. As indications that this different outcome was likely, Stone points to the Court's observation that there was no explanation for his conduct in his background as

provided at sentencing, the Court's reservations about the sentence, and the First Circuit's statement that it would have applied Kimbrough to impose a lower sentence.

As an example of the type of expert opinion that Villa could have obtained, Stone includes with his motion a psychosexual evaluation by Dr. Craig S. King.[3]  Dr. King noted that the clinical interview in his evaluation "represents [Stone's] account of his personal history." (ECF No. 29 at 4.)  Stone told Dr. King that he was an unpopular child who wore glasses, attended special education, was teased by his classmates for taking Ritalin for attention deficit hyperactivity disorder, and was a target of anti-Semitism because he was the only Jewish child in his school.  He was molested at the age of 15 by a male coworker in his 30s from a McDonald's restaurant, but he did not report the incident at the time.  Stone's parents "kicked him out of the house" when he dropped out of postsecondary education and was unemployed.  (Id. at 5.)  He became homeless but later served in the Army for four months, receiving a medical discharge. He completed a 10-week wilderness program, studied computer repair, and worked at a group home for mentally disabled adults.  After having knee surgery, he became addicted to the painkillers Percocet and Demerol and was suffering from this addiction at the time of the offense.  Following the execution of the search warrant at his home, Stone lost his job and then worked at a taxi company, a convenience store, and another group home.  He also smoked marijuana twice a week with his friends.  Dr. King found that Stone had the support of his family and peers and had turned his life around in the three years between the search of his home and his guilty plea.

The evaluation indicated that Stone started viewing online pornography at the age of 13 and masturbating to lingerie catalogs at the age of 15.  He was comfortable walking around his

---

[3]  Although I granted Stone's motion to seal Dr. King's evaluation, see ECF No. 30, the parties discuss the contents of the evaluation extensively in their briefs, and I must consider the evaluation in making this recommended decision.

apartment naked, and he engaged in role-playing, exhibitionism, and sex in public places with his steady girlfriend. He had casual sex with 25 to 30 women in his life and admitted being unfaithful to his girlfriend. He reported trading child pornography online for the purpose of receiving images of "developed teenage girls" from other Internet users. (Id. at 8.) Dr. King found that Stone had no antisocial personality disorder or mental disorder of a sexual nature, that he was "a fantasy-driven online offender," and that he was attracted to "developed teenage girls" because he was immature. (Id. at 11-12.) Dr. King further found that Stone limited his interest in such girls to the Internet and had no desire to meet them in person. Citing and discussing empirical studies, Dr. King concluded that Stone was "at minimal to low risk" of reoffending and "could be safely managed in the community under intensive supervision." (Id.)

In urging the Court to conclude that Villa provided ineffective assistance in this case, Stone cites several other cases. For example, in Williams v. Taylor, 529 U.S. 362, 395-97 (2000), a death penalty case, defense counsel was ineffective for failing to investigate and produce at sentencing certain evidence of the defendant's background and characteristics. In Prou v. United States, 199 F.3d 37, 47-49 (1st Cir. 1999), defense counsel was ineffective for failing to raise a claim that was "a clear winner." In Dugas v. Coplan, 428 F.3d 317, 328-32, 334-43 (1st Cir. 2005), defense counsel was ineffective during a jury trial because he had conducted an inadequate investigation and failed to consult an expert on the charged crime of arson. I note that the facts and circumstances of those three cases were different from Stone's case. Stone also cites United States v. Beiermann, 599 F. Supp. 2d 1087, 1112-14 (N.D. Iowa 2009), in which the court relied on expert opinion and the defendant's post-arrest conduct in sentencing him to 90 months rather than within the Guideline range of 210 to 240 months.

6

The Government filed its opposition to Stone's motion after the parties deposed Villa regarding her representation of Stone, and her deposition is part of the expanded record in this case. (ECF No. 71-1.) Thus, the Government draws extensively on Villa's testimony to argue that her performance was not deficient and that Stone did not suffer any prejudice as a result. Villa indicated that she had been a public defender since 1991 and was familiar with the Court, having practiced as an assistant federal defender in Maine since 2006. Although she had represented hundreds of defendants, her first child pornography case was Stone's, and so she consulted other attorneys experienced in such cases. She knew that the Court usually imposed a Guidelines sentence in child pornography cases and that the Court was receptive to defendants' acceptance of responsibility. Therefore, she was concerned when Stone expressed reluctance to accept responsibility for his offense during a presentence interview with the probation officer. Villa ended the interview and then convinced Stone to submit a letter stating that he was "disgusted" by his decision to post child pornography in his online photo album. (ECF No. 73 at pp. 5-6.) The probation officer subsequently recommended that Stone's Guideline calculation include a three-level reduction for acceptance of responsibility. The Court adopted that recommendation and sentenced Stone to the low end of the Guideline range. The Government therefore argues that Villa obtained the best possible sentence for Stone in light of the Court's practices and Stone's initial attitude about his offense.

Villa testified that it was not typical in Maine federal court to use a mental health evaluation to aid a child pornography defendant at sentencing, that the Court was not receptive to such evaluations, and that there were limited funds available for expert reports. Furthermore, Villa frequently questioned Stone's honesty with her and had no reason to believe that Stone would be more forthright in an interview with an expert. Despite having numerous opportunities

to do so, Stone did not provide Villa or the probation officer with much of the background information he reported to Dr. King, including molestation at the age of 15, homelessness, addiction to painkillers, consistent marijuana use, role-playing, exhibitionism, and sex in public places with his girlfriend. Stone's report to Dr. King was therefore inconsistent with Stone's statements to Villa, the probation officer, and the Court, because Stone stated at his sentencing that he did not believe there was anything inaccurate or incorrect in the presentence investigation report. Villa had perceived some risk in obtaining an expert evaluation because it could have revealed other criminal conduct by Stone or resulted in a finding that he was likely to reoffend, thus limiting the kinds of arguments Villa could ethically present to the Court. The Government accordingly argues that Villa's decision not to obtain a mental health evaluation does not constitute ineffective assistance of counsel. The Government also points out that Stone failed to cite any authority indicating that it is ineffective assistance for defense counsel to fail to present such an evaluation in a child pornography sentencing.

      The attorney for the Government and Stone's counsel continue their back and forth dialog about what Villa might have, could have, or should have done in their reply and sur-reply memoranda. (See ECF Nos. 81 & 85.) Stone emphasizes that Villa lacked experience in child pornography cases and testified vaguely about her consultations with more experienced attorneys. Stone also contends that it was inadequate for Villa to spend 10 hours with him and 41 hours overall on his case. In Stone's view, if Villa felt that he was not being honest with her, she should have spent more time with him to establish a trusting relationship and should have sought independent verification of the information he provided. Stone maintains that Villa knew of certain information that was helpful to him but she failed to use it at sentencing, such as his attendance in special education and his attention deficit hyperactivity disorder.

As to the Court's practices, Stone argues that Villa's knowledge that child pornography defendants usually received Guidelines sentences raised the importance of seeking an expert evaluation in order to demonstrate that Stone was the rare defendant who deserved a sentence that varied from the Guidelines. Stone claims that Villa's decision not to obtain such an evaluation prejudiced him, citing another child pornography case, United States v. Cameron, 1:09-cr-00024-JAW, 2011 U.S. Dist. Lexis 89629, 2011 WL 890502 (D. Me. Mar. 11, 2011), in which the Court imposed a sentence of 192 months rather than a Guidelines sentence of 262 to 327 months. However, the Court compared Stone to Cameron, explaining that "Mr. Stone had more child pornography images than Mr. Cameron . . . and distributed the material to someone he believed to be a minor." Id. at *16. The Court also stated that Stone's conduct was "more egregious" because he engaged in sexual chats with a person he thought was a 15-year-old-girl, invited her to view his online child pornography album, and transmitted footage of himself masturbating, while Cameron had not reached out to a minor. Id.

Stone notes that Cameron presented the Court with an assessment by a licensed clinical social worker, thus suggesting that Villa should have presented an expert evaluation. However, Cameron's assessment led the Court to highlight the inconsistencies between that document and Cameron's probation interview. As a result, the Court stated that it was "dubious" and "not certain" about Cameron's risk of recidivism. Id. at *18. In addition to relying on Cameron, Stone contends that there was no risk in pursuing an expert evaluation in his case because even if such an evaluation was unfavorable to him, Villa would not have had to use it and would have had no obligation to disclose it.

In its short sur-reply, the Government argues that Villa's lack of experience with child pornography cases and the specific amount of time she spent on Stone's case are not

9

determinative of the effectiveness of her assistance. The Government emphasizes that Villa knew whether the Court would be receptive to certain arguments, that Stone provided inconsistent information to Dr. King, and that an unfavorable evaluation would have restricted Villa's ability to argue that Stone was unlikely to reoffend.

*My Analysis of the Parties' Arguments*

Stone's briefing of the sole issue he raised in his motion is extensive and impressive, but I am not persuaded that he has shown deficient performance by Villa. Stone repeatedly argues that obtaining an expert evaluation for use at sentencing carried no risk. However, the riskiness of that action must be assessed in light of the information available to Villa at the time. See United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991) (counsel's performance is to be considered "not in hindsight, but based on what the lawyer knew, or should have known, at the time [her] tactical choices were made and implemented"). Villa felt that Stone was not telling her the whole truth, and she worried that an expert evaluation might result in more harm than good. Villa did not know whether Stone had committed other offenses or whether an expert would find that he was likely to reoffend. Villa could not have simply ignored any adverse findings, as Stone contends. Such findings would have negatively affected Villa's ability to advocate the best possible outcome for Stone.

It is impossible to know the content of an expert evaluation that Villa might have obtained, but the example of Dr. King's evaluation illustrates a risk that Villa avoided. This evaluation contains many inconsistencies with Stone's presentence investigation report. Stone provides no explanation for these inconsistencies other than to blame Villa for not spending enough time meeting with him and working on his case. If Stone had been molested as a teenager, homeless, addicted to painkillers, a consistent marijuana user, and engaged in role-

playing, exhibitionism, and public sex, there is nothing in the record indicating why he did not provide this information to Villa and did not seek to include it in the presentence investigation report. If Villa had obtained an evaluation with such inconsistencies, she would have been left with the difficult task of explaining the situation to the Court, which she knew was not receptive to psychological evaluations in any event.

Although Stone seems to view the inconsistent information in the evaluation as helpful to him, I need search no farther than Cameron to draw a reasonable inference that the Court would not have looked favorably on an expert evaluation that was inconsistent with the presentence investigation report. The Court remained uncertain about Cameron's risk of recidivism, and it seems likely that the Court would have reached the same conclusion as to Stone if it had been presented with an evaluation like Dr. King's. Therefore, obtaining an expert evaluation of Stone was not "a clear winner," Prou, 199 F.3d at 48, and it was not deficient for Villa to decide not to pursue an evaluation as a tactical decision. Counsel's deposition testimony reveals that she considered and rejected the idea of some type of psychological evaluation, although she did not consider a future risk evaluation per se. (Villa Tr. at pp. 81-88.)

It is not necessary to proceed to the prejudice prong of Strickland if counsel's performance is not deficient, but I nonetheless note that on these facts, it appears to an outside observer such as myself that Stone cannot demonstrate a reasonable probability that he would have received a lower sentence if Villa had presented an expert evaluation. The Court clearly indicated that the most important factor in selecting the sentence was Stone's online interaction with a person he believed was a 15-year-old girl. Nothing in Dr. King's evaluation changed the fact that Stone had engaged in that conduct. The Court was not preoccupied with the likelihood that Stone would reoffend. Although Stone's background was also an important factor, I have

explained that inconsistencies between the presentence investigation report and an evaluation such as Dr. King's probably would not have benefited Stone before the Court. However, I am keenly aware that the sentencing judge himself is the best person to judge whether there was any prejudice to Stone on these facts, if the Court disagrees with my assessment of the performance prong. In my view Stone fails to satisfy the deficient performance prong of the ineffective assistance calculus as well as the prejudice prong, but if the Court believes otherwise it seems to me on these facts the remedy would be limited to resentencing before the same judge, with the aid of Dr. King's evaluation. See Lafler v. Cooper, 132 S. Ct. 1376, 1391 (2012) (in determining appropriate remedy, the Court recognizes that the sentencing judge retains the discretion to reject a plea agreement and leave the sentence undisturbed even if there has been ineffective assistance of counsel in advising defendant to reject the plea agreement initially).

## CONCLUSION

Based upon the foregoing, Stone's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 should be summarily dismissed. I further recommend that a certificate of appealability should not issue in the event Stone files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 13, 2012