UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08-cr-00006-JAW |
| | ) | |
| ADAM A. STONE | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a two-hundred-ten-month sentence following conviction for transportation of child pornography moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because the inmate has not shown extraordinary and compelling reasons to justify a reduction in sentence and the factors under 18 U.S.C. § 3553(a) do not support release.

I.   **BACKGROUND**[1]

A.   **Factual Background**

In February 2005, police officers in Illinois investigating internet crimes created an Internet profile for a 15-year-old female student named "Nikki." *PSR* ¶ 2. After meeting[2] online, Mr. Stone invited "Nikki" to view him on his web camera,

---

[1]   The Court takes the facts from the Revised Presentence Investigation Report (PSR) that U.S. Probation and Pretrial Services (PO) prepared in anticipation of Mr. Stone's sentencing. *Restricted U.S. Probation Filing*, Attach. 3, *Revised Presentence Investigation Report* (ECF No. 113) (*PSR*). At Mr. Stone's sentencing, the Court adopted the revised PSR without changes. *Restricted U.S. Probation Filing*, Attach. 2, *Statement of Reasons* at 1. The Court also takes the facts from the opinion of the Court of Appeals for the First Circuit. *United States v. Stone*, 575 F.3d 83, 85-86 (1st Cir. 2009).

[2]   As part of the Illinois investigation, an officer created a profile that indicated he was a 15-year-old female student whose login name was "brownhairedgirl_1." *PSR* ¶ 2. During subsequent contacts, "Nikki" told Mr. Stone her name and that she lived in Illinois. *Id.*

which the officer, posing as "Nikki," did, although Mr. Stone's back was to the camera. *Id.* During this first online conversation, Mr. Stone asked Nikki whether she had ever seen a man naked, whether she had ever masturbated, and whether she had ever watched a man masturbate. *Stone*, 575 F.3d at 85.

Several days later, Mr. Stone invited Nikki to look at pictures in his photo album, which he had posted in the chat window and was available for anyone in the chat room to view. *PSR* ¶ 2. Mr. Stone explained to "Nikki" that he had gotten these images from the chat room but to get them you "gotta give them stuff too." *Id.* The officer, posing as "Nikki," viewed the photo album, which contained hundreds of images of children engaged in sexually explicit conduct. *Id.*

On a second occasion Mr. Stone again asked "Nikki" to view him on the web camera. *Id.* This time, Mr. Stone's face was visible, and the officer was able to identify him from his motor vehicle picture. *Id.* Over the course of several conversations, Mr. Stone shared a total of four photo albums with "Nikki." *Id.* Each of these albums contained hundreds of images of children engaged in sexually explicit conduct. *Id.* Finally, during their last online conversation, Mr. Stone again contacted "brownhairedgirl_1" and offered to masturbate in front of his web camera. *Stone*, 575 F.3d at 86. The detective then observed Mr. Stone masturbating. *Id.*

When interviewed by the Federal Bureau of Investigation (FBI) Mr. Stone admitted that he downloaded pornographic images of young girls, ages ten to eighteen, from the internet and combined them into the albums to share with other chat members. *PSR* ¶ 3. Forensic examination of Mr. Stone's computer revealed 192

images and six videos of child pornography. *Id.* ¶ 4. Each video equaled seventy-five images pursuant to U.S.S.G. §2G2.2, Application Note 4(B)(ii), for a total of 642 images. *Id.* The 642 images included ones of children under the age of 12, and ones involving sadistic and masochistic conduct. *Id.*

### B.   Procedural Background

On January 9, 2008, Mr. Stone waived indictment, *Waiver of Indictment* (ECF No. 1), and pleaded guilty to one count of Transportation of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(1), 2256(8)(A). *Information* (ECF No. 2); *Min. Entry* (ECF No. 7). At the April 7, 2008, sentencing hearing the Court made the following guideline calculations: Mr. Stone's guideline sentence range was from 210 to 240 months, his term of supervised release was at least two years up to a term of life, he faced a fine range of $20,000 to $200,000, and was subject to a special assessment of $100. *Tr. of Proceedings* at 39:11-17 (ECF No. 16) (*Sentencing Tr.*). The Court sentenced Mr. Stone to two-hundred-and-ten months imprisonment, five years of supervised release, no fine, and a $100 special assessment. *Id.* at 47:5-18, 48:5-6; *J.* at 2-5 (ECF No. 12); *Min. Entry* (ECF No. 11).

On April 10, 2008, Mr. Stone appealed his sentence. *Notice of Appeal* (ECF No. 13). The Court of Appeals for the First Circuit affirmed his sentence on August 5, 2009. *J.* (ECF No. 22); *Stone*, 575 F.3d at 97. On January 6, 2011, Mr. Stone filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. *Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (ECF No. 27). On January 17, 2013, over Mr. Stone's objection, the Court affirmed the Magistrate Judge's Recommended Decision to deny this motion.

*Order Aff. Recommended Decision and Denying Mot. for Oral Argument* (ECF No. 91).

On February 7, 2013, Mr. Stone moved for a certificate of appealability. *Pet'r's Application for Certificate of Appealability* (ECF No. 92); *Am. Notice of Appeal* (ECF No. 94). On April 25, 2013, the Court issued a final order reaffirming its earlier orders denying Mr. Stone's §2255 petition and certificate of appealability. *Final Order* (ECF No. 103). On July 16, 2013, the First Circuit denied Mr. Stone's certificate of appealability and terminated his appeal. *J.* (ECF No. 105).

The case remained dormant until 2021. On March 10, 2021, Mr. Stone filed a motion for recommendation to a residential reentry center. *Mot. for Recommendation to Residential Reentry Center* (ECF No. 107). The Court granted Mr. Stone's request on March 25, 2021. *Order on Mot. for Recommendation to Residential Reentry Center* (ECF No. 110).

On May 7, 2021, Mr. Stone filed his initial pro se petition for compassionate release. *Mot. for Compassionate Release* (ECF No. 111) (*Def's Mot.*). On June 10, 2021, Mr. Stone filed a statement of intent to proceed with his motion for compassionate release now that he had obtained counsel. *Def.'s Statement of Intent Regarding Initial Pro Se Filing of Petition for Compassionate Release* (ECF No. 120). The Government responded on July 8, 2021. *Gov't's Obj. to Def.'s Mot. for Compassionate Release* (ECF No. 125) (*Gov't's Opp'n*). Mr. Stone replied to the Government's opposition on July 27, 2021. *Reply to Resp. to Mot. for Compassionate Release* (ECF No. 130) (*Def.'s Reply*).

## II.    THE PARTIES' POSITIONS

### A.    Adam Stone's Position

Mr. Stone moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and asks the Court for a "six month Reduction in Sentence and to have those six months added to [his] 5 year term of Supervised Release." *Def's Mot.* at 1.  Mr. Stone notes that he has "served 75.8% of [his] full term sentence and 88.5% of [his] statutory term for a total of 13 years, 3 months and 7 days." *Id.*  Mr. Stone "do[es] not have any type of debilitating medical condition." *Id.* at 2.  However, Mr. Stone is being treated for asthma, takes two medications daily to prevent asthma attacks, and uses an inhaler "on an as needed basis."  Mr. Stone states, ultimately, that "with the use of these medications, the asthma is fully under control and does not interfere with [his] daily life." *Id.*

Mr. Stone tested positive for COVID-19 on January 9, 2021 but recovered by January 19, 2021.  *Id.*  He has not had "any lingering or long term side-effects from contracting the virus" and received two doses of the Pfizer COVID-19 vaccination as of March 31, 2021. *Id.*  However, Mr. Stone acknowledges that he does "fear another COVID-19 outbreak at the prison." *Id.*  Mr. Stone explains that "with all of the lockdowns and restrictions, [he has] had less access to education and work" and that "[t]here have been times over the past year where [he had] to stay in [his]cell for days, or even weeks at a time." *Id.* at 3.  Mr. Stone states that he had to spend twenty-one days in isolation after returning from an appointment with a pulmonologist "to ensure that [he] had not contracted COVID-19 during [his] trip to the doctor." *Id.*

5

Mr. Stone acknowledges that some courts have "found that harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently 'extraordinary to warrant compassionate release.'" *Id.* (quoting *United States v. Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 U.S. Dist. LEXIS 74760, at *10 (S.D.N.Y. Apr. 19, 2021)). Nonetheless, he states that "it is also true that Courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive than would otherwise have been the case.'" *Id.* (quoting *Hatcher*, 2021 U.S. Dist. LEXIS 74760, at *10).

In support of his request for compassionate release, Mr. Stone further emphasizes that he has a good disciplinary record and has learned two new trades while incarcerated. *Id.* at 2. Mr. Stone "achieved [] an 8000 hour (4-year) apprenticeship through the Commonwealth of Virginia for Maintenance Electrician[,] . . . spent a total of 6 years working in the Electric Shop in FCC Petersburg[,] . . . learned, and worked in, the Heating, Ventilation and Air Conditioning (HVAC) trade[, and] . . . also learned leather craft." *Id.* at 2. Mr. Stone indicates that he has "a very large support system consisting of friends and family," *id.* at 2, and has "put together a release plan to help guide [him] when [he is] first released." *Id.* at 4. Mr. Stone further notes that "[he is] a low risk of recidivating based on [his] PATTERN score. *Id.* at 2. Mr. Stone believes that "combined with the skills and trade that [he has] learned" he is "at an even lower risk of recidivating." *Id.* Citing seven cases, Mr.

Stone asserts that "[s]everal Circuit Courts have ruled that things such as good behavior, harsh sentences, education and rehabilitation efforts do qualify people for reductions in sentences under 18 U.S.C. § 3582(c)(1)(A)." *Id.* at 3.

Mr. Stone concludes by stating that "he . . . feel[s] that[he has] put forth great effort to rehabilitate [himself], gain an education in two skilled trades that will be conducive to [his] release, and prepare [himself] as much as possible for a successful reentry into society and a very successful future." *Id.* at 4.

### B.    The Government's Opposition

The Government first explains the Bureau of Prisons' (BOP) response to the COVID-19 Pandemic. *Gov't's Opp'n* at 3. The BOP is currently in Phase Nine of its Action Plan, under which "prisoner programs are resuming using precautions to fight the spread of COVID." *Id.* at 4. This includes "resumption of full-time treatment with social distancing modifications in certain residential programs, the resumption or continuation of certain non-residential programs . . . and the resumption of GED testing in groups of six or less." *Id.* Additionally, while "[s]ocial and legal visits were stopped as of March 13, 2020 . . . BOP has increased detainee's telephone allowance by 500 minutes per month." *Id.* at 5. "Taken together, these measures are designed to mitigate sharply the risk of COVID-19 transmission in BOP institution[s]," however, the "BOP must carry out its charge to incarcerate sentenced criminal to protect the public." *Id.* at 6.

The Government next addresses Mr. Stone's COVID-19 argument, acknowledging that "people who suffer from moderate to severe asthma are at increased risk of severe illness from COVID-19" and that, as such, "moderate to

severe asthma normally presents an 'extraordinary and compelling' reason for release pursuant to 18 U.S.C. § 3582(c).'" *Id.* at 10.  However, the Government contends that because Mr. Stone has "been diagnosed with mild asthma . . . [and] acknowledges that he does not have 'any type of debilitating medical condition' and that, with the use of medication, his 'asthma is fully under control and does not interfere with [his] daily life'" he does not meet the threshold for "extraordinary and compelling." *Id.* (quoting *Def.'s Mot.* at 2).  The Government also points to Mr. Stone's status as a Care Level 1 inmate, which according to a BOP representative "means he is healthy or has only simple chronic care issues." *Id.*  Citing a panoply of cases, the Government contends that because "defendant now has received both doses of the Pfizer vaccine . . . the combination of the COVID-19 pandemic and his underlying medical condition no longer present an extraordinary and compelling reason warranting release." *Id.*

The Government further argues that "the fact that before becoming fully vaccinated, the defendant contracted COVID-19 and has had no lingering effects is also relevant to the Court's analysis.  In light of his vaccination, it is now highly unlikely that the defendant will contract COVID-19 and, in the unlikely event that he did, his prior experience demonstrates that he will not necessarily become seriously ill." *Id.* at 13-14.  Finally, the Government asserts that as of the time of its filing, there were "no inmates and no staff currently testing positive at FCI Loretto" where Mr. Stone is currently held. *Id.* at 2.  Thus far, "660 inmates at FCI Loretto have contracted the virus and recovered, and there have been no COVID-19 deaths

at the facility."  Additionally, as of the time of the Government's filing, "132 staff and 586 inmates at FCI Loretto have been fully vaccinated against COVID-19.  *Id.*

The Government finally addresses extraordinary and compelling reasons unrelated to COVID-19.  The Government differentiates the cases Mr. Stone cites for the proposition that "good behavior, harsh sentences, education and rehabilitation efforts do qualify people for reductions in sentences," stating that these cases "involved unique circumstances and/or punitive sentences that are inapplicable to the defendant's case."  *Id.* at 14.  The Government points to Mr. Stone's own acknowledgement that "his sentence was harsh but warranted," *id.* at 14-15 (citing *Def's Mot.* at 4), concluding that "even lengthy sentences, if justified, should be served in their entirety in order to reflect the seriousness of the offense, promote respect for law, provide just punishment for the offense, and promote general deterrence." *Id.* at 15.

## C.   Adam Stone's Reply

Mr. Stone replies first to the Government's COVID-19 arguments.  He states that although he has received both doses of the Pfizer vaccine "[he] is still at risk for contracting the COVID-19 virus and its variants." *Def's Reply* at 2.  Mr. Stone points to the statistic that the Pfizer vaccine "is not 100% [effective]" and that "[t]here have been thousands of 'breakthrough' cases of people contracting, being hospitalized and even dying from COVID-19 even after being vaccinated."  *Id.*  Mr. Stone acknowledges the presence of the "newer 'Delta Variant'" and that "it is still unknown the efficacy of the Pfizer vaccine."  *Id.*  Mr. Stone recognizes BOP's "extraordinary measures to fight and slow the spread of COVID-19" but emphasizes that "in the prison setting . .

9

. there is absolutely no possible way to socially distance, or avoid, the virus when it enters an institution." *Id.* Mr. Stone again cites a variety of cases where "inmates have been granted reductions in their sentences under 18 U.S.C. 3582(c)(1)(A) after having been vaccinated." *Id.*

Mr. Stone submits that "[his] offense is inexcusable and deserved the harsh sentence that [he] received in 2008," but points to three cases where courts, including this Court, reduced a defendant's sentence where they had minimal time left on their sentence. *Id.* at 3. Mr. Stone reiterates that upon his release he will "have greater access to help, support and treatment" and that he plans to begin his sex offender treatment as soon as he can. *Id.* at 4. Mr. Stone concludes with a coda that because two months lapsed since his initial filing, he is now only seeking a four-month reduction in his sentence, so as not to interfere with his planned twelve months at the Residential Reentry Center. *Id.* at 4.

## III.   LEGAL STANDARD

The Court has addressed the legal standard for deciding a motion for compassionate release on numerous occasions. *See, e.g.*, *United States v. Sanford*, No. 1:03-cr-0053-JAW, 2021 U.S. Dist. LEXIS 182163, at *18-20 (D. Me. Sept. 23, 2021); *United States v. Crosby*, No. 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at *16-23 (D. Me. Oct. 27, 2020). Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)," and (3) release comports with "applicable

10

policy statements issued by the Sentencing Commission . . . ."   18 U.S.C. § 3582(c)(1)(A); *United States v. Saccoccia*, 10 F.4th 1, 4, 7-8 (1st Cir. 2021).[3]

If the prisoner meets the extraordinary and compelling circumstances standard necessary to justify compassionate release, before granting the petition, courts must still apply the 18 U.S.C. § 3553(a) factors to assess,

> [t]he nature and circumstances of the offense and the history and characteristics of the defendant, the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).  "Though the section 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they

---

[3]       The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions brought by the Director of the Bureau of Prisons under § 3582(c)(1)(A).  However, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act."  *Crosby*, 2020 U.S. Dist. LEXIS 199085, at *20 n.1.  In *Saccoccia*, 10 F.4th at 7-8, the First Circuit addressed § 1B1.13 in the context of the First Step Act and, after noting that "the Sentencing Commission's current policy guidance predates the F[irst] S[tep] A[ct]" and "addresses the compassionate release process as one instituted by motion of the BOP," the First Circuit observed that the argument that § 1B1.13 is not an "applicable" policy statement constraining the courts "has been viewed approvingly by the overwhelming majority of courts of appeals that have passed on the issue."  *Id.* (collecting cases).  In *Saccoccia*, the First Circuit declined to resolve this issue because it was not necessary to do so.  *Id.* at 8.  Nevertheless, the First Circuit assumed, "for argument's sake, that a court adjudicating a prisoner-initiated motion for compassionate release may go beyond the confines of the Sentencing Commission's current policy guidance . . . in determining whether a particular circumstance or set of circumstances constitutes an extraordinary and compelling reason to grant the motion."  *Id.* at.  The Court views *Saccoccia* as consistent with the District's earlier expressed conclusion that even though § 1B1.13 "provides helpful guidance," it is "not ultimately conclusive given the statutory change."  *United States v. Rembert*, No. 2:12-cr-66-DBH, 2020 U.S. Dist. LEXIS 210841, at *1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019), *aff'd* No. 19-1785 (1st Cir. July 23, 2020)).

"need only be addressed if the court finds an extraordinary and compelling reason favoring release." *Saccoccia*, 10 F.4th at 8.

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, 473 F. Supp. 3d 14, 16 (D.N.H. 2020) (internal citations omitted)); *see Saccoccia*, 10 F.4th at 4 (stating that the First Circuit's standard of review "[r]ecogniz[es] that the compassionate-release statute provides that a district court's decision to grant or deny a compassionate-release motion is discretionary").

## IV.   DISCUSSION[4]

### A.   Extraordinary and Compelling Reasons

To grant Mr. Stone's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence. Mr. Stone submits that (1) his risk of contracting COVID-19 a second time; and (2) his educational and rehabilitative efforts while incarcerated are "extraordinary and compelling" reasons for reducing his sentence.

---

[4]   18 U.S.C. § 3582(c)(1)(A) contains an administrative exhaustion requirement that bars as untimely some compassionate release motions. *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2021 U.S. Dist. LEXIS 20672, at *9-10 (D. Me. Feb. 3, 2021). However, the Government may waive or concede exhaustion. *Id.* at 10. Here, the Government conceded that Mr. Stone complied with the exhaustion requirement and the Court therefore considers Mr. Stone's motion on the merits. *Gov't's Opp'n* at 10 n.6.

1.      **COVID-19**

The Court first considers Mr. Stone's current health status and risk profile.  To begin, the Court acknowledges that Mr. Stone tested positive for COVID-19 on January 9, 2021.  *Def.'s Mot*. at 2.  The Court regrets that this occurred but is pleased to hear that Mr. Stone has made a full recovery and has no lingering or long-term side effects from contracting the virus.  *Id.*

Turning to Mr. Stone's health status, the Court considers Mr. Stone's current risk from COVID-19 in light of his asthma diagnosis.  The Center for Disease Control (CDC) states that persons with certain medical conditions are at an increased risk of severe illness if they contract COVID-19.  *People with Certain Med. Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 3, 2021).  Among those at risk for serious illness are people with "chronic lung diseases," *id.*, including those with asthma, if it is "moderate-to-severe or uncontrolled."  *People with Moderate to Severe Asthma*, CDC,                    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fasthma.html (last visited Nov. 3, 2021).   While the Court could find no definition of "moderate," "severe" or "uncontrolled," as defined by the CDC, Mr. Stone states that although he has asthma, he "do[es] not have any type of debilitating medical condition."  *Def.'s Mot*. at 2.  Furthermore, Mr. Stone explains that while he takes two medications to prevent

asthma attacks and uses an inhaler as needed, "the asthma is fully under control and does not interfere with [his] daily life."[5]

Based on Mr. Stone's own characterization of his medical condition, he does not fall into the category of patients with "moderate," "severe," or "uncontrolled" asthma who are at an increased risk of severe illness if they contract COVID-19. Instead, Mr. Stone's account of his asthma would suggest that it is "mild" or at the very least "controlled." *See United States v. Dent*, No. 2:15-CR-10-DBH-01, 2020 U.S. Dist. LEXIS 194814, at *4 (D. Me. Oct. 21, 2020) ("[e]ven combined with the pandemic . . . mild asthma and purported congenital heart murmur do not rise to [the] level [of extraordinary and compelling]"). While a person may contract COVID-19 more than once, and the symptoms may be different each time, Mr. Stone does not suggest that his asthma diagnosis worsened his COVID-19 symptoms when he was initially diagnosed with the virus in early 2021. Pursuant to CDC guidance, the Court concludes that Mr. Stone's asthma diagnosis in and of itself does not constitute an "extraordinary and compelling" reason for his release.

The Court's conclusion is further supported by Mr. Stone's vaccination status. Medical records from the BOP indicate that as of March 2021 Mr. Stone received both doses of the Pfizer vaccine. *Def.'s Mot.*, Attach. 10, *COVID-19 Vaccine Consent* at 2-3. The CDC states that "COVID-19 vaccines are safe and effective at preventing

---

[5]     Mr. Stone makes no allegation that the BOP is "stonewalling . . . medical testing or treatment" or in any way hindering his ability to get asthma treatment. *See Saccoccia*, 10 F.4th at 6-7 (stating that a potential disease diagnosis may be grounds for a finding of "extraordinary and compelling" reasons if the BOP refuses to provide testing and treatment).

COVID-19, including severe illness and death." *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited Nov. 3, 2021). Indeed, based on clinical trials, the Pfizer vaccine is projected to be 95% effective at preventing infection from the COVID-19 virus. *Pfizer-BioNTech COVID-19 Vaccine Overview and Safety (also known as COMIRNATY)*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last visited Nov.3, 2021). In Mr. Stone's reply, he points to the newer Delta variant and the rise in "breakthrough cases" as posing an increased threat despite his vaccination status. *Def.'s Reply* at 2. However, the CDC maintains that "COVID-19 vaccines are effective against severe illness and death from variants of the virus that cause COVID-19 currently circulating in the United States, including the Delta variant." *When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited Nov. 3, 2021). As to the prevalence of "breakthrough" cases, the CDC points out that "breakthrough" infections only occur in a "small proportion of people who are fully vaccinated, even with the Delta variant." *Id.* Moreover, "[w]hen these infections occur . . . they tend to be mild." *Id.*

Other decisions from this District have recognized that someone who is vaccinated may still be at risk of contracting other COVID-19 variants but rejected this argument as an "extraordinary and compelling" reason for release because of the overall efficacy of COVID-19 vaccines. *See United States v. Vincente*, No: 1:16-cr-00077-JAW, 2021 U.S. Dist. LEXIS 104466, at *13 (D. Me. June 3, 2021); *United*

*States v. Akerson*, No. 1:16-cr-00730-JAW-1, 2021 U.S. Dist. LEXIS 8842, at *26-27 (D. Me. May 10, 2021); *United States v. French*, No. 1:12-cr-0016-JAW-1, 2021 U.S. Dist. LEXIS 87013, at *44 (D. Me. May 6, 2021).  Even in light of the emergence of the Delta variant, courts have not changed their approach to assessing an inmate's COVID-19 risk as an extraordinary and compelling reason for compassionate release. *See United States v. Herman*, No. 18-40010-TSH, 2021 U.S. Dist. LEXIS 157664 at *4 (D. Mass. Aug. 20, 2021) (rejecting compassionate release request even in light of the Delta variant because of the low positive case count at the FCI); *see United States v. Perry*, No. 4:17-cr-40010-TSH, 2021 U.S. Dist. LEXIS 164699, at *2 (D. Mass. Aug. 31, 2021) (same); *United States v. Adams*, No. 18-215(a) ADM/TNL, 2021 U.S. Dist. LEXIS 182091, at *2 (D. Minn. Sept. 23, 2021) (same).

The Court also considers Mr. Stone's risk based on the prevalence of COVID-19 at FCI Loretto and the current vaccination rate at the facility.  Currently, 148 staff members have been fully vaccinated, as have 761 out of 772 inmates at the FCI. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Nov. 3, 2021); *FCI Loretto*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lor/ (last visited Nov.. 3, 2021).  While 631 inmates and 69 staff have tested positive over the course of the pandemic, there have been no deaths, and all who have tested positive have recovered.  *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Nov. 3, 2021).  Finally, as of November 3, 2021, there is one positive case among the

staff but no positive cases among inmates at the facility. *Id.* There are currently no inmates with pending tests. *Id.*

The Court recognizes that COVID-19 has impacted Mr. Stone's access to education and work and that he and other inmates have spent a significant amount of time isolated to prevent the spread of the virus. *Def.'s Mot.* at 3. However, the pandemic, and its subsequent natural impacts in and of themselves do not present an "extraordinary and compelling" justification for Mr. Stone's release. *See United States v. Davis*, No. 2:15-cr-00186-GZS, 2021 U.S. Dist. LEXIS 171136 at *3 (D. Me. Sept. 9, 2021) ("The Court acknowledges that the ongoing pandemic is an extraordinary event for our entire country and has been especially challenging for the Bureau of Prisons. However, it is against this backdrop that a defendant must show individualized extraordinary and compelling reasons why he should not be required to serve the remainder of his sentence").

Ultimately, the Court concludes that the low incidence of COVID-19 infections and high vaccination rate among inmates and staff at FCI Loretto, coupled with the fact that Mr. Stone is likely not at an increased risk of severe illness were he to contract the virus again, weighs against granting Mr. Stone's motion for compassionate release. The Court therefore concludes that COVID-19 does not present an extraordinary or compelling reason to justify Mr. Stone's release.

### 2.    Rehabilitation and Educational Efforts

Mr. Stone also submits that his rehabilitation and educational efforts constitute "extraordinary and compelling" reasons for a sentence reduction. The Court disagrees. As a general rule, "rehabilitation alone is not to be considered an

extraordinary and compelling reason." *Dent*, 2020 U.S. Dist. LEXIS 194814, at *1; *United States v. Buli*, No. 2:16-cr-00174-JDL-2, 2020 U.S. Dist. LEXIS 196562, at *2 (D. Me. Oct. 22, 2020) (stating that "newfound respect for the law" is alone insufficient to warrant release without a showing of a medical or health-related condition placing a prisoner at risk).

Here, Mr. Stone explains that he has completed an 8000-hour electrician program, worked for the electrical shop for 6 years, trained in HVAC, and learned leather craft. *Def.'s Mot.* at 2. Mr. Stone also attaches certificates from more than thirty different programs he has completed while incarcerated. *Id.*, Attach. 6, *Ex. F*, at 2-25. Mr. Stone further explains that he has had a good disciplinary record and has a low PATTERN score, which speaks well for his chances of recidivating. *Id.* However, given that the Court has already determined that Mr. Stone does not have a health condition that increases his risk of severe COVID-19, these rehabilitative efforts by themselves are not enough to be "extraordinary and compelling."

While Mr. Stone cites several cases from different district courts supporting his proposition, none is sufficiently analogous to Mr. Stone's situation. In those cases, each defendant had indeed made significant rehabilitative and educational efforts, but these efforts alone did not justify early release. Rather, the cases Mr. Stone cites involved situations where a defendant was subject to a disproportionately large sentence because of sentence "stacking," which was the primary basis for early

release.[6]  *See e.g.*, *United States v. Rahim*, No. 4:03-cr-45-MLB, 2021 U.S. Dist. LEXIS 71864, at *18-21 (N.D. Ga. Apr. 14, 2021) (holding that sentence disparity alone warranted early release, but the petitioner's circumstances became even more extraordinary and compelling considering his rehabilitative and educational efforts); *United States v. Briggs*, No. 06-715, 2021 U.S. Dist. LEXIS at *16-20 (E.D. Pa. Mar. 8, 2021) (same); *United States v. McCreary*, No. CR-04-00313-003-PHX-SRB, 2021 U.S. Dist. LEXIS 64243, at *8-15 (D. Ariz. March. 25, 2021) (same).  Mr. Stone's efforts to educate himself and earn certifications as an electrician and HVAC technician, among other achievements, are commendable.  The Court does not diminish his efforts, but they are, alone, insufficient to warrant early release.

## B.     The Section 3553(a) Factors

The Court also considers whether the 18 U.S.C. § 3553(a) factors favor Mr. Stone.  Although the Court considered each factor, the Court discusses only the most pertinent factors: the nature and circumstances of the offense, the need to protect the public, and deterrence.

First, the Court notes the seriousness of Mr. Stone's crime.  At sentencing the Court stated that Mr. Stone was not just downloading child pornography but "creat[ing] albums of pornography, allow[ing] others to view his collection in exchange for additional images, and . . . thereby encourag[ing[ the distribution of child pornography to others."  *Sentencing Tr.* 44:11-14.  At sentencing the Court described

---

[6]      Mr. Stone states that "[he] was given a very harsh sentence of 210 months for a very serious offense.  [H]is offense is inexcusable and deserv[ing] [of] the harsh sentence that [he] received."  *Def.'s Reply* at 3.  Thus, Mr. Stone does not put forth an argument that his sentence was disproportionate or "stacked" in any way.

the "staggering" number of "abhorrent" images involving young victims, *id.* at 43:14-19, and noted "the defendant's sexual chat with a person he believed was 15 years old, and . . . the defendant's engaging in actual sexual activity and transmitting that activity to a person he believed was 15." *Id.* at 44:24-25 to 45:1-6.  In the Court's view, this type of crime deserves considerable punishment.  This weighs against Mr. Stone's release.

Notwithstanding the fact that Mr. Stone has completed the majority of his sentence, his rehabilitative efforts during incarceration, and plans upon release, the Court also considered the need to protect the public and the need for deterrence. Indeed, the Court recognizes the importance of protecting the victims of child pornography.  *Id.* at 44:3-4.  In instances such as this where the defendant is involved in a serious crime, the completion of a substantial sentence is necessary to reflect its seriousness, deter the defendant from committing similar conduct upon release, and prevent others from engaging in comparable criminal behavior.  Moreover, in the Court's view, sexual offenses against children are among the most serious crimes that come before this Court.  By definition, they typically involve vulnerable victims, who are not able to protect themselves, they almost always involve an enormous breach of trust by the adults who produce this material, and the damage to the children usually has long-term consequences on the victims.

Furthermore, the Court is not persuaded by the cases Mr. Stone cites to support the proposition that his sentence should be reduced because he has less than 14 months remaining on his statutory sentence.  *See Def.'s Mot.* at 1; *Find an Inmate*,

20

Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Nov. 3, 2021). The Court is unaware of any cases where a court has granted compassionate release solely because an inmate has served a majority of his sentence. Rather, the length of time already served is one among many factors a court may consider after a defendant has already met their burden of showing extraordinary and compelling reasons. *See United States v. Fader*, No. 1:12-cr-00007-JAW-01, 2020 U.S. Dist. LEXIS 179282, at *6-8 (D. Me. Sept. 29, 2020) (granting a motion for compassionate release where the defendant suffered from diabetes, obesity, hypertension, and G6PD enzyme deficiency *in addition to* having less than two months remaining on her sentence); *United States v. Millette*, No. 2:16-cr-00004-NT, 2020 U.S. Dist. LEXIS 239696, at *4-6,  (D. Me. Dec. 21, 2020) (granting compassionate release and stating that "robust supervised release conditions" were sufficient to alleviate concerns about public safety where defendant had alleged "extraordinary and compelling" reasons for relief due to  serious health conditions and quadrupling COVID-19 numbers at the FCI); *United States v. Manglona*, No. CR14-5393RJB, 2021 U.S. Dist. LEXIS 42104, at *3-4 (W.D. Wash. Mar. 3, 2021) (finding that compassionate release was warranted where defendant had high cholesterol, high blood pressure, PTSD, moderate asthma, and obesity and was unlikely to be a danger to the public after seventy-nine months in custody with a release date over thirteen months away).  As discussed above, Mr. Stone has not shown any extraordinary and compelling reasons for a reduction in sentence, and the Court will not reduce his sentence based solely on the fact that he is due to be released in approximately fourteen months.

Although Mr. Stone has had good behavior while incarcerated, has no other serious prior convictions, and has a low PATTERN score, early release would undermine the seriousness of the offense, and the need for deterrence and just punishment. On balance, the 18 U.S.C § 3553(a) factors do not weigh in favor of Mr. Stone's release.

### C.    Summary

The Court concludes that Mr. Stone has not met his burden to show extraordinary and compelling reasons for a sentence reduction, nor do the §3553(a) factors support release. The Court is heartened by the strides Mr. Stone has made to anticipate his release from prison. It is also clear from the support letters attached to Mr. Stone's motion that his family is committed to helping him rebuild his life upon his release. *Def.'s Mot.*, Attach. 11, *Letters from Margie Glou, Kevin Tanzer, Carolyn Herbert, and Lisa Tanzer*. While Mr. Stone's own actions and his family's support point towards a successful reentry into society, Mr. Stone does not qualify for compassionate release.

## V.    CONCLUSION

The Court DISMISSES without prejudice Mr. Stone's Motion for Compassionate Release (ECF No. 111).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of November, 2021