UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08-cr-00006-JAW |
| | ) | |
| ADAM A. STONE | ) | |

## ORDER ON MOTION TO MODIFY TERMS AND CONDITIONS OF SUPERVISED RELEASE

A prisoner incarcerated for transporting and shipping child pornography moves to modify the terms and conditions of his supervised release to bring the standard conditions language into conformity with the current version of the conditions used by the District and to alter certain special conditions to allow him access to a computer and the internet. The Court grants in part and denies in part the motion to modify the terms and conditions of supervised release.

## I.    BACKGROUND

On April 7, 2008, the Court sentenced Adam A. Stone to 210 months imprisonment followed by a five-year term of supervised release for transporting and shipping child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and 2256(8)(A). *J.* (ECF No. 12). On May 11, 2021, the Probation Office (PO) petitioned this Court to add five additional Special Conditions to Mr. Stone's conditions of supervised release in anticipation of Mr. Stone's release from incarceration in November 2022. *Request for Modifying the Conditions or Term of Supervision with the Consent of the Offender* (ECF No. 114) (*PO Modification*). Mr. Stone waived his right to a hearing on the

condition modifications, *see id.*, Attach. 1, *Waiver of H'rg to Modify Conditions of Probation/Supervised Release or Extend Term of Supervision*, at 1-2 (*Modification Waiver*), and the Court granted the petition to modify that same day. *Order* (ECF No. 115).

On October 15, 2021, Mr. Stone filed a motion to clarify and modify the terms and conditions of his supervised release. *Adam Stone's Pro-Se Mot. to Clarify/Modify Terms and Conditions of Supervised Release and Special Terms and Conditions of Supervised Release* (ECF No. 131) (*Def.'s Mot.*). On November 10, 2021, the Government responded to Mr. Stone's motion. *Gov't Resp. to Def.'s Mot. for Modifying Conditions of Release* (ECF No. 134) (*Gov't Resp.*). On November 22, 2021, Mr. Stone replied to the Government's response. *Adam Stone's Pro Se Rebuttal to the Gov't's Resp. to Def.'s Mot. for Modifying Conditions of Release* (ECF No. 135) (*Def.'s Reply*). On January 10, 2022, Mr. Stone filed a notice with the Court, confirming that as of January 7, 2022, he had been released from incarceration. *Notice of Change of Address* (ECF No. 136).

## II.    THE PARTIES' POSITIONS

### A.    Adam Stone's Position

Mr. Stone "respectfully challeng[es] several of the conditions of his supervision, and ask[s] for clarification of others." *Def.'s Mot.* at 1. He submits that making certain changes to his conditions of supervised release will "still encourage and promote the [18 U.S.C. § 3553(a)(2)] factors" of deterrence, public protection, and corrective treatment. *Id.* at 2. Mr. Stone first argues that "[s]everal of the conditions of supervised release that were imposed upon [him] have since been reworded or

changed to be more specific and less vague and to fit more in line with our technology driven society of today." *Id.* at 1. Mr. Stone's position is that Standard Conditions One, Five, Six, Eight, Nine, and Ten have been rewritten since the Court imposed them in 2008 and that the language of his conditions should be altered to conform to the current wording used by the District. *Id.* at 2-4. Mr. Stone also says that Standard Condition Four, which states that he "shall support his . . .dependents and meet other family responsibilities" is moot because he has no dependents or familial responsibilities and the condition should accordingly be removed. *Id.* at 3.

Next, Mr. Stone contends that Standard Condition Thirteen, which requires him to "notify third parties of risks that may be occasioned by [his] criminal record or personal history or characteristics," is "overly broad and should be removed." *Id.* at 5. He says that his "compliance with the sex offender registration process will ensure that people are aware of his criminal record, personal history and/or characteristics." *Id.* However, he submits that if the Court determines that the condition should remain in place, the condition should be updated to reflect the current language used for notifying others upon the probation officer's assessment that a defendant may pose a risk to others. *Id.*

Mr. Stone further asserts that Special Condition One, which prohibits him from "possess[ing] or us[ing] a computer to access an online 'computer service' . . . without prior approval of the U.S. Probation Office (PO)," is "overly broad and is very out-dated" particularly as "[a]t the time of his sentencing, almost 14 years ago, no one could have foreseen how essential technology would become in the future." *Id.* Mr.

3

Stone requests that the Court modify this special condition so that he may "possess and/or use a computer or internet capable device" so long as he does not do so to access child pornography or communicate with anyone under the age of eighteen. *Id.* He says that he will "consent to the installation of any hardware/software to monitor any computer or other electronic communication or data storage device . . . to confirm his compliance with this condition." *Id.*

Mr. Stone also asks the Court to alter two of the new special conditions imposed in May 2021. He says that one of the new conditions, which states that he may not "knowingly possess, view, or otherwise use material depicting sexually explicit conduct involving children . . . [or] involving adults," is "overly broad and does not take [into] account . . . such [things] as television shows and movies." *Id.* at 6. He requests that this condition be updated to state that he may not possess or control "any matter that depicts or describes sexually explicit conduct . . . involving a person that has not obtained the age of 18." *Id.* He also contends that another new condition prohibiting him from being "in the company of or hav[ing] contact with children who [he] know[s] are under the age of 18, with the exception of [his] own children" is "overly broad and does not provide guidance for every day activities or familial events." *Id.* Mr. Stone asks the Court to update this special condition so that it states, in part, that he "must not have direct contact with any child [he] know[s] or reasonably should know to be under the age of 18," without his probation officer's permission, and that if he does have any unpermitted direct contact, that he must alert his probation officer within twenty-four hours. *Id.*

4

### B.      The Government's Response

In consultation with the PO, the Government states that neither it, nor the PO "oppose modifying the conditions of release to match the language currently used in this District." *Gov't Resp.* at 1.  However, both the Government and the PO "oppose deleting select provisions of current conditions that generally apply to all defendants, or otherwise fashioning conditions divergent from those applicable to other, similarly situated defendants in this District and this Circuit." *Id.*  The Government says that "[d]oing so is counter to the principle of treating similarly [situated] defendant[s] the same" under 18 U.S.C. § 3553.  *Id.*  It also argues that accepting Mr. Stone's proposed revisions would "create[] ambiguity in the standards of behavior" and would "make[] supervision and enforcement of the conditions potentially more difficult and cumbersome for both the [PO] and the Court."  *Id.*

The Government specifically addresses Mr. Stone's request to modify the conditions related to internet usage and submits that "[t]here is nothing inappropriate about the [PO] approving Mr. Stone's access to the internet, so long as that approval is not unfairly or arbitrarily withheld."  *Id.* at 2.  The Government also says that "while Mr. Stone may not currently have any dependents, that alone is no basis for deleting" that part of Standard Condition Four.  *Id.* at 1 n.1.

### C.      Adam Stone's Reply

In reply, Mr. Stone says that he "does NOT object to the Government wishing to leaving Standard Condition number 4 in place." *Def.'s Reply* at 1.  As to internet usage, Mr. Stone reasons that "an offender's terms and conditions of supervised release should be tailored to each offender and not be a blanket condition." *Def.'s*

*Reply* at 1. He says that the primary reason he seeks to use the internet is not for "his personal convenience" but to "continue his HVAC and Electrical schooling that he started during his incarceration." *Id.* at 2. Mr. Stone points out that he also needs the internet for "access to modern day services" and that "the Government strongly encourages taxpayers to file their returns electronically, and more and more commerce is conducted on-line." *Id.* Mr. Stone notes that "[t]he Government also disseminates vast amounts of information via [its] many websites." *Id.* Mr. Stone concludes by reiterating that he will agree to and pay for internet monitoring, which is enough to "protect the community from any further crimes by Mr. Stone." *Id.*

## III.   LEGAL STANDARD

"Pursuant to 18 U.S.C. § 3583(e)(2) and Fed. R. Crim. P. 32.1(c), the district court has plenary jurisdiction to supervise a convicted defendant's release, including the jurisdiction to modify the conditions of supervised release . . . ." *United States v. El-Silimy*, 417 F. Supp. 2d 75, 79 (2006) (D. Me. 2006) (quoting *United States v. D'Amario*, 412 F.3d 253, 255 (1st Cir. 2005) (per curiam)). Section 3583(e)(2) permits a sentencing court to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification."[1]  18 U.S.C. § 3583(e)(2). "To modify a supervised release condition, §

---

[1]      Rule 32.1(c) of the Federal Rules of Criminal Procedure provides that "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." FED. R. CRIM. P. 32.1(c)(1). However, "[a] hearing is not required if: . . . (B) the relief sought is favorable to the person and does not extend the term of . . . supervised release; and (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity

3583(e) directs the court to consider the factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *El-Silimy*, 417 F. Supp. 2d at 79.

"The showing required for a defendant to obtain a modification of a condition of supervised release pursuant to section 3583(e) is an open question in [the First Circuit]." *United States v. Bischoff*, No. 2:20-cr-00067-JAW, 2021 U.S. Dist. LEXIS 88305, at *14 (D. Me. May 10, 2021) (alteration in *Bischoff*) (quoting *United States v. Garrasteguy*, 559 F.3d 34, 43 n.12 (1st Cir. 2009)). "The unanswered question is whether, in modifying or terminating supervised release, the trial court acts within its discretion or whether a defendant must demonstrate changed or extraordinary circumstances." *Id.* (comparing *United States v. Kay*, 283 F. App'x 944, 946 (3d Cir. 2008) (unpublished), *with United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). As this Court has done previously, it will consider Mr. Stone's motion to modify under both standards. *See, e.g.*, *Bischoff*, 2021 U.S. Dist. LEXIS 88305, at *15; *United States v. Swain*, No. 1:11-cr-00015-JAW, 2021 U.S. Dist. LEXIS 77113, at *8-10 (D. Me. Apr. 22, 2021); *United States v. Caparotta*, No. 1:06-cr-00058-JAW, 2016 U.S. Dist. LEXIS 80925, at *4-6 (D. Me. June 22, 2016).

---

to object, and has not done so." FED. R. CRIM. P. 32.1(c)(2)(B)-(C).  Here, a hearing is not required because the conditions sought are favorable to Mr. Stone and the Government has stated its position through briefing. *See United States v. Miranda-Sotolongo*, 694 F. App'x 415, 416-17 (7th Cir. 2017) (concluding that a hearing was not required where the government responded in writing to the Defendant's request and the district court adopted the government's recommendation).  Moreover, the only change the Court makes to Mr. Stone's conditions of supervised release is to bring the language of the conditions into conformity with the language currently used by the District, which the Government has not objected to.

## IV.   DISCUSSION

To begin, the Court notes that the Government and the PO have no objections to updating Mr. Stone's conditions of supervised release to reflect the standard language currently used in this District.  The Court therefore grants Mr. Stone's motion to update his terms and conditions of supervised release to reflect the District's current language.  Similarly, given Mr. Stone's reply to the Government's response, namely that he has no objection to retaining that condition, the Court leaves in place Standard Condition Four. *See Def.'s Reply* at 1.  What remain are Mr. Stone's proposed modifications to Special Condition One, two new Special Conditions imposed in May 2021, and Standard Condition Thirteen.

### A.   Modification Under the Higher Standard of Extraordinary or Changed Conditions

Assuming the higher standard applies, Mr. Stone has not demonstrated changed circumstances or an extraordinary justification for lifting the special conditions related to third party notification of his criminal history, his access to "computer services," or his ability to knowingly possesses material depicting sexually explicit conduct or be in the company of, or contact, people under the age of eighteen.

#### 1.   Special Condition One

Mr. Stone says that restricting his access to "computer services" is outdated and that he needs the internet to apply for jobs and continue his education.  However, the challenged condition reads that he shall not use a computer "without prior approval of the [PO]," meaning that he is not subject to a complete ban on using this type of technology but must get approval from his probation officer before doing so.

8

Furthermore, by its terms, the condition does not prohibit Mr. Stone from searching for a job and continuing his education. If these activities can only occur online or if he would like to perform these activities online, he can work with the PO to ensure that he is able to accomplish his personal and professional goals now that he is released. It is the Court's experience that the PO is anxious to ensure that supervisees obtain employment and continue their education and, to its knowledge, despite the countless supervisees who have this condition, it has not proven to be an issue in any similar case.

In addition, Special Condition One as a whole is permissible because it "cause[s] no greater deprivation of liberty than is reasonably necessary to achieve the goals of supervised release, and . . . the condition[] [is] reasonably related both to these goals and to the nature and circumstances of the offense and the history and characteristics of the defendant." *United States v. Ramos*, 763 F.3d 45, 60 (1st Cir. 2014) (internal quotation marks omitted) (quoting *United States v. Perazza-Mercado*, 553 F.3d 65, 69 (1st Cir. 2009)). In *Ramos*, the First Circuit explained that where a defendant "did not use the internet for his crime, and has not used the internet in the past for impermissible purposes, such as viewing child pornography, or contacting minors inappropriately," a ban on home internet use is "a greater deprivation of liberty than necessary for the goals of supervised release" when other "narrowly tailored monitoring tools" are available. *Id.* at 60-61 (discussing *Perazza-Mercado*, 553 F.3d at 72-74).

The opposite is true in this case. Here, Mr. Stone used the internet to download and create albums of child pornography that he distributed to others via the internet. *Tr. of Proceedings* at 44:11-14 (ECF No. 16) (*Sentencing Tr.*). Mr. Stone also engaged in a sexual chat with a person he believed was 15 years old, and further engaged in actual sexual activity he transmitted via a webcam and the internet to the person he believed was 15. *Id.* at 44:24-45:6. Under such circumstances, restricting computer and internet access is "'reasonably necessary' to achieve the goals of supervised release" and is "reasonably related" to the "nature and circumstances of the offense and the history and characteristics of the defendant" because the condition both punishes and deters behavior central to Mr. Stone's past criminal conduct. *Ramos*, 763 F.3d at 60 (quoting *Perazza-Mercado*, 553 F.3d at 69); *see also id.* at 62 (describing how other circuit courts have affirmed supervised release conditions limiting internet and computer access for defendants whose offense conduct involved online child pornography).

Finally, this conclusion aligns with the *United States Sentencing Commission Guidelines Manual* which states that when a defendant has been convicted of a sex offense the Guidelines recommend the imposition of "[a] condition limiting the use of a computer or an interactive computer service *in cases in which the defendant used such items.*" *U.S. Sentencing Guidelines Manual* § 5D1.3(d)(7)(B) (2021) (emphasis added). Mr. Stone says that fifteen years ago when the condition was originally imposed the Court could not have imagined how central such technology would be to daily life. However, as noted in the 2021 Guidelines, this condition is regularly

imposed today against individuals convicted of child pornography crimes. The Court leaves Special Condition One in place as currently written.

### 2.    New Special Conditions Imposed May 2021

As to the two new special conditions imposed May 2021, Mr. Stone has similarly not demonstrated extraordinary circumstances warranting the modification of these conditions.

### a.    Special Condition Restricting Material Depicting Sexually Explicit Conduct

Mr. Stone's desire to access certain television shows and movies that may depict sexually explicit conduct is not an extraordinary circumstance. Furthermore, contrary to Mr. Stone's assertion, this condition is not overly broad. In *United States v. McCullock*, 991 F.3d 313 (1st Cir. 2021), the First Circuit concluded that a special condition "banning the possession or viewing of adult sex-related materials" was permissible where the defendant "possess[ed] and trad[ed] child porn on a mind-blowing scale." *Id.* at 320. In this particular case, Mr. Stone possessed and shared hundreds of pornographic images and "pornography [therefore] 'contributed to [the defendant's] offense or would be likely to do so in the future.'" *Id.* at 320-21 (quoting *United States v. Gall*, 829 F.3d 64, 76 (1st Cir. 2016)). Mr. Stone possessed a totally of 642 images, including images of children under the age of twelve and images portraying sadistic and masochistic conduct, *Restricted U.S. Probation Filing*, Attach. 3, *Revised Presentence Investigation Report* ¶ 4 (ECF No. 113) (*PSR*), which the Court characterized at sentencing as a "staggering" number of "abhorrent" images. *Sentencing Tr.* at 43:14-19. This particular special condition is therefore not

unreasonable nor unrelated to Mr. Stone's conduct and Mr. Stone has demonstrated no compelling reason why the Court should alter this condition.

> **b.     Special Condition Limiting Contact With Children**

Similarly, Mr. Stone's contention that the new condition limiting his contact with children is unnecessarily broad for everyday activities and family events is unpersuasive as Mr. Stone has not demonstrate an extraordinary reason for altering the special condition.  Mr. Stone has not alleged particular reasons why this condition would be particularly onerous.  As with the other special conditions Mr. Stone seeks to modify, the Court notes that this special condition is reasonably related to Mr. Stone's conduct.  Mr. Stone possessed and shared sexual images of children under the age of eighteen and engaged in a sexual conversation and sent taped sexual conduct to someone he believed was 15.  Restricting Mr. Stone's contact with children he knows are under the age of 18 is therefore related to Mr. Stone's offense and in the interest of public safety and deterrence.  Indeed, the First Circuit has upheld the imposition of similar supervised release conditions in child pornography cases. *United States v. McCullock*, 991 F.3d 313, 322 (1st Cir. 2021); *United States v. Cabrera-Rivera*, 893 F.3d 14, 26-27 (1st Cir. 2018); *United States v. Pabon*, 819 F.3d 26, 33-34 (1st Cir. 2016); *United States v. Mercado*, 777 F.3d 532, 538-39 (1st Cir. 2015)

Mr. Stone has not demonstrated any compelling reason why this condition should not apply.  *Cf. United States v. Del Valle-Cruz*, 785 F.3d 48, 57 (1st Cir. 2015) (holding that a special condition prohibiting a defendant from residing in the same home as his own child impermissibly infringed on a fundamental constitutional

liberty interest).  To the extent that Mr. Stone does not understand the parameters of the condition, he can work with his probation officer to understand how he can go about his daily life without violating this special condition of supervised release.

As to the two new conditions of supervised release, the Court notes that Mr. Stone had the opportunity to contest these conditions in open court but voluntarily waived his right to do so.  Under Federal Rule of Criminal Procedure 32.1(c) the Court is required to hold a hearing before modifying the conditions of supervised release if the modification sought is not favorable to the defendant.  FED. R. CRIM. P. 31.2(c). At such a hearing, a defendant is entitled to representation by counsel and "an opportunity to make a statement and present any information in mitigation." *Id.*  As the Court noted previously, when the Probation Office moved to add new special conditions of supervised released in May 2021, including the two conditions Mr. Stone now seeks to modify, Mr. Stone waived in writing his right to a hearing, his right to counsel, and his right to make a statement and present mitigating information.  *See Modification Waiver* at 1-2.  The arguments Mr. Stone sets forth now could have been raised when the PO moved to modify Mr. Stone's conditions of supervised release.

### 3.   Standard Condition Thirteen

Finally, Mr. Stone requests to alter Standard Condition Thirteen, reasoning the condition as written is unnecessary because his compliance with sex offender registration will put others on notice of his criminal history.  *See Def.'s Mot.* at 5. However, this justification shows no extraordinary change in Mr. Stone's circumstances.  The current District of Maine standard condition reads:

13

> If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.

The source for Standard Condition Thirteen is the United States Sentencing Guidelines Manual § 5D1.3(12), which provides virtually identical language:

> If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction.  The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

This standard condition has been upheld by other courts.  *United States v. Janis*, 995 F.3d 647, 652-53 (8th Cir. 2021); *United States v. Hull*, 893 F.3d 1221, 1223-24 (10th Cir. 2018); *United States v. Nash*, 438 F.3d 1302, 1306-07 (11th Cir. 2006); *see United States v. Cueto-Núñez*, 869 F.3d 31, 39-40 (1st Cir. 2017) (upholding imposition of standard conditions of supervised release).

In *Ketsenburg v. United States*, No. 4:18 CV 2155 CDP, 2022 U.S. Dist. LEXIS 20124 (E.D. Mo. Feb. 4, 2022), the district court observed that the probation officer has the duty to identify and communicate the risk to the supervisee before the supervisee has the duty to inform another person of the risk.  *Id.* at *9-10. Furthermore, if a supervisee has genuine confusion about what the condition requires, the supervisee may ask questions of the probation officer, who is statutorily required to "instruct [him] . . . as to the conditions specified by the sentencing court." *Id.* at *10 (alterations in *Ketsenburg*) (quoting 18 U.S.C. § 3603(1)).

The Court disagrees that sex offender registration is sufficient to put others on notice of his criminal conduct.  Although sex offender registries are available, Mr. Stone's proposal places the burden on the public to know about his background and few people regularly search state sex offender registries.  The standard condition places the burden on Mr. Stone, not on the public, to inform relevant persons about his background and the Court does not view that burden allocation to be inappropriate.  Nor has Mr. Stone put forth any explanation as to a change in circumstances that makes informing others of his criminal conduct unduly burdensome.

Moreover, as the language of the current condition makes plain, Mr. Stone is not required on his own to inform third parties or organizations as to his risk.  The standard condition only becomes effective when the probation officer concludes that he poses a risk and requires him to notify that third person or organization.  Mr. Stone has not presented the Court with a reason why the probation officer should not have the authority to require him to give notice, if the probation officer determines that he poses a risk to a third party or organization.

Although the Court denies Mr. Stone's motion to remove this condition, it grants Mr. Stone's request to update the standard condition language to be consistent with language currently used by the District.

### B.   Lower Standard of Court Discretion

As Mr. Stone has not demonstrated changed or extraordinary circumstances warranting modification of his conditions of supervised release, the Court turns to the lower alternative standard.  Assuming the Court has discretion under § 3583(e)

15

to modify Mr. Stone's terms of supervised release, the Court declines to do so in light of the 18 U.S.C. § 3553(a) factors. The Court considered each factor but focuses here on the nature and circumstances of the offense, the need to protect the public, deterrence, and the need to avoid unwarranted sentence disparities.

The Court addressed many of these factors in its recent order on Mr. Stone's motion for compassionate release. *See Order on Mot. for Compassionate Release* (ECF No. 133). In that order the Court considered "the seriousness of Mr. Stone's crime" and how Mr. Stone used the internet to download and create albums of child pornography that he distributed to others, engaged in a sexual chat with someone he believed was 15, and actually engaged in sexual activity that he sent to the person he believed to be 15. *Id.* at 19-20. The Court has previously described these types of sexual offenses against children as conduct warranting considerable punishment, including not only incarceration, but the imposition of certain conditions of supervised release.

Special Condition One, which restricts Mr. Stone's internet access, and the two new Special Conditions imposed May 2021, which prohibit Mr. Stone from possessing, viewing, or otherwise using sexually explicit materials and from having contact with children under the age of 18, reflect the seriousness of Mr. Stone's crime. Given that Mr. Stone's crime was committed using a computer and the internet and was against children, these special conditions serve as specific deterrence for Mr. Stone to deter him from committing a similar offense upon his release, as well as general deterrence to prevent others from engaging in similar conduct. Moreover, these conditions

16

protect both the public and victims of child pornography.  Although these conditions may be cumbersome or onerous and may impact Mr. Stone's daily life, they serve as guardrails to Mr. Stone's conduct and are a necessary measure following Mr. Stone's incarceration.

Finally, the Court must also consider the need to avoid unwarranted sentencing disparities among defendants who commit similar crimes.  This District routinely imposes these same conditions on other defendants who have been charged with the possession, production, and distribution of child pornography.  It would be inconsistent for the Court to alter these conditions for Mr. Stone, but to impose them as-is against other similarly situated defendants.  Mr. Stone has not presented evidence suggesting that his situation is different from that of other similarly situated defendants or that his circumstances have significantly changed since the Court originally imposed these conditions in 2008 and again in May 2021.

## V.   CONCLUSION

The Court GRANTS Mr. Stone's Pro-Se Motion to Clarify/Modify Terms and Conditions of Supervised Release and Special Terms and Conditions of Supervised Release (ECF No. 131) as to updating his Terms and Conditions of Supervised Release to reflect the language currently used in this District, but DENIES Mr. Stone's motion to otherwise modify or delete his Standard and Special Conditions of Supervised Release.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of March, 2022